FILED
United States Court of Appeals
Tenth Circuit

October 5, 2010

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

SANJEEV DALLAKOTI,

Petitioner,

v.                                                                No. 09-9565

ERIC H. HOLDER, JR.,
United States Attorney General,

Respondent.

**PETITION FOR REVIEW OF A DECISION OF THE
BOARD OF IMMIGRATION APPEALS**

Submitted on the briefs:[*]

Catharine A. Bull, Bull & Davies, P.C., Denver, Colorado, for Petitioner.

Tony West, Assistant Attorney General; Blair T. O'Connor, Assistant Director
Civil Division, Office of Immigration Litigation; Remi Adalemo, Attorney,
United States Department of Justice, Civil Division, Office of Immigration
Litigation, Washington, D.C., for Respondent.

Before **TACHA**, **LUCERO**, and **MURPHY**, Circuit Judges.

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is
therefore ordered submitted without oral argument.

**TACHA**, Circuit Judge.

Petitioner Sanjeev Dallakoti, a native and citizen of Nepal, petitions this court for review of the decision of the Board of Immigration Appeals (BIA), which upheld the immigration judge's (IJ) denial of his application for asylum, restriction on removal, and protection under the Convention Against Torture (CAT), and also denied his motion for remand. According to Mr. Dallakoti, he was persecuted by the Maoists not only because he was a successful businessman, but also on account of his family's political opinions, which he claims should be imputed to him. We deny the petition for review.

I.

Mr. Dallakoti entered the United States on December 18, 2005, as a non-immigrant visitor, with temporary authorization to remain in this country until June 17, 2006. On June 27, 2006, he filed for asylum. Following an interview, the Department of Homeland Security denied his application and referred him for removal proceedings.

In the subsequent proceedings, Mr. Dallakoti conceded removability, but sought asylum, restriction on removal, and protection under the CAT. The IJ held a hearing on March 5, 2008, at which Mr. Dallakoti and his uncle testified. Mr. Dallakoti testified that he owned and operated a gas station in Chitwan, Nepal. His father transferred ownership of the gas station to him when he was

seventeen-years-old, and he had been running the business for two to three years before he came to the United States in late 2005, to visit his uncle, Hari Dallakoti.

What began as a vacation morphed into a request for asylum. As his uncle testified, "he wanted to come and visit me, you know, for a long time and then during the meantime he was doing his business and then time permitted him and he got a visa[.]" Admin. R. at 159. But about a month prior to the expiration of his visa, Mr. Dallakoti telephoned his parents in Nepal. According to Mr. Dallakoti, they told him "people are looking for [you]. So it's better not to go back." *Id*. at 137. He also telephoned his cousins, who told him "people are looking for you so please don't come. Your life is in danger if you come back. . . . After then I decided and changed my mind to stay here and I filed the political asylum." *Id*.

The trouble began when Mr. Dallakoti took over ownership and operation of the gas station. He testified that he was targeted by the Maoists for money and gasoline. In addition to threatening to kill or kidnap him if he did not meet their demands, on one occasion Mr. Dallakoti was beaten when he refused to give them money. Although it is unclear when it happened, Mr. Dallakoti also testified that the Maoists slapped and hit his father. When asked why he was targeted by the Maoists, he said:

> Because I had a gas pump, this petrol pump, I am the owner of the gas and also it was licensed on my name, my business was very successful. And they knew how successful I am so how much money

> I was making. So if they targeted me, I can supply them gas whenever they need this. . . . Also I know other people . . . and those owner who has the gas station so I can bring from them and support them all the time or also we can provide them gas whenever they need it.

*Id.* at 133. He further testified that when he came to visit his uncle in the United States, he left the day-to-day operation of the gas station in the hands of a manager from whom the Maoists continue to demand money and ask him to hide their weapons. Both Mr. Dallakoti and his uncle testified to an incident concerning a bomb that was planted by the Maoists in the road near the family home in Chitwan. They testified that after the bomb was planted, the Maoists ordered Mr. Dallakoti and his family to remove some stones in the road, thus exposing them to potential harm. However, Nepalese military personnel showed up on the scene to diffuse the bomb and chase away the Maoists.

During the hearing, Mr. Dallakoti's lawyer adduced evidence about his family's political affiliations. A self-described "[d]emocrat," *id.* at 129, Mr. Dallakoti testified that although he "wasn't involved" in politics, *id.*, his father and another uncle had previously held offices in the National Democratic Party and National Congress Party, respectively. His lawyer argued "[t]he political membership of the family . . . can be imputed to [Mr. Dallakoti] because he belongs to the family," *id.* at 187, thus providing an additional reason why the Maoists targeted Mr. Dallakoti.

In an oral decision announced at the close of the hearing, the IJ denied all relief. Although the IJ questioned Mr. Dallakoti's credibility, he did not make an adverse credibility finding; instead he found his testimony "unconvincing due to inconsistency and also due to general vagueness[.]" *Id*. at 76. The IJ analyzed the case under the mixed-motive standard set forth in the Immigration and Nationality Act § 208(b)(1)(B)(i), 8 U.S.C. § 1158(b)(1)(B)(i), and concluded that the political opinions of Mr. Dallakoti and/or his family were not a central reason he was targeted by the Maoists:

> [T]he central reason for the Maoists being interested in [Mr. Dallakoti] is a financial one and not one that had anything to do with [his] political opinion. In other words, regardless of [Mr. Dallakoti's] political opinion, actual or imputed, the Maoists are motivated by a desire to obtain gasoline and money from [him] and from his family. Whatever interests they may have in [Mr. Dallakoti's] alleged political activity, that interest is not a 'central reason' for [the] persecuti[on].

*Id*. at 78. Mr. Dallakoti appealed to the BIA and also filed a motion to remand.

On appeal, the BIA noted that the IJ did not make an explicit adverse credibility finding, and thus "presumed that [Mr. Dallakoti] is credible." *Id*. at 7. Nonetheless, the BIA found that "[t]he record supports the conclusion that the Maoists' threats were motivated by the ability of [Mr. Dallakoti] to supply needed financial resources," *id*. at 8, and "not related to [his] political opinion," *id*. "While we are sympathetic to [Mr. Dallakoti's] desire not to give in to the demands of the Maoists, criminal extortion efforts do not constitute persecution

on account of a protected ground when it is reasonable to conclude that those who threatened or harmed the alien were not motivated by the protected ground." *Id.* As such, the BIA found that Mr. Dallakoti "has failed to demonstrate the requisite nexus to a protected ground for purposes of past persecution or a well-founded fear of future persecution." *Id.* And because he failed to satisfy the lower burden of proof required for asylum, the BIA concluded that he failed to satisfy the higher burden of proof for restriction on removal. Also, finding no evidence that it was more likely than not that Mr. Dallakoti would be tortured upon returning to Nepal, the BIA also concluded that he was not eligible for relief under the CAT.

In support of his motion to remand, Mr. Dallakoti supplied various documents to the BIA, including a medical discharge summary, papers as to his ownership and operation of the gas station, and proof of his political membership. He also submitted several news articles describing Maoist activities, including their success in the elections, all of which post-dated his March 2008 hearing. The BIA denied the motion for the following reasons. First, Mr. Dallakoti "has not explained why this evidence [excluding the news articles] was not available and could not have been discovered or presented at the time of the March 2008 hearing." *Id.* Second, Mr. Dallakoti's testimony about the beating and his gas station is "presumed credible for purposes of this appeal," *id.*, and thus these documents added nothing. Third, "the evidence does not establish that [Mr. Dallakoti's] political opinion was a 'central reason' for the acts of

extortion." *Id*. Last, although the news articles postdated his hearing, they did not assist him in "establish[ing] his *prima facie* eligibility for relief or affect the outcome of the case." *Id*.

## II.

"Our scope of review directly correlates to the form of the BIA decision." *Sidabutar v. Gonzales*, 503 F.3d 1116, 1123 (10th Cir. 2007). "When a single member of the BIA issues a brief order affirming an IJ's decision, this court reviews both the decision of the BIA and any parts of the IJ's decision relied on by the BIA in reaching its conclusion." *Razkane v. Holder*, 562 F.3d 1283, 1287 (10th Cir. 2009).[1] We review the BIA's legal determinations de novo and its findings of fact for substantial evidence. *Witjaksono v. Holder*, 573 F.3d 968, 977 (10th Cir. 2009). "Under a substantial evidence standard, factual findings are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Id*. (quotation omitted).

To be granted asylum, Mr. Dallakoti was required to show that he was unable or unwilling to return to Nepal "because of persecution or a well-founded

---

[1]     As additional reasons for denying relief, the IJ concluded that Mr. Dallakoti failed to prove past persecution because "the general level of harm imposed . . . were threats only," Admin. R. at 78, and in any event he could relocate to Kathmandu. We do not address these issues because the BIA did not rely on them in its decision. *See Sidabutar v. Gonzales*, 503 F.3d 1116, 1123 (10th Cir. 2007) (holding "this Court will not affirm on grounds raised in the IJ decision unless they are relied upon by the BIA in its affirmance") (quotation omitted).

fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42); *see also Sarr v. Gonzales,* 474 F.3d 783, 788 (10th Cir. 2007). The burden of proof for restriction on removal is higher than for asylum, i.e., it requires the alien to "demonstrate that his life or freedom would be threatened in the proposed country of removal because of his race, religion, nationality, membership in a particular social group, or political opinion." *Id.* (quotation and brackets omitted).

Because Mr. Dallakoti applied for asylum following enactment of the REAL ID Act in 2005, his burden of proof in this mixed-motive case is set forth in 8 U.S.C. § 1158(b)(1)(B)(i): "To establish that the applicant is a refugee within the meaning of [§ 1101(a)(42)], the applicant must establish that race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for persecuting the applicant." Although we have not previously considered the issue, we join those circuits that have accepted the BIA's interpretation of § 1158(b)(1)(B)(i) set forth in *In re J–B–N & S–M*, 24 I. & N. Dec. 208, 214 (BIA 2007). *See Shaikh v. Holder*, 588 F.3d 861, 864 (5th Cir. 2009); *Quinteros-Mendoza v. Holder* 556 F.3d 159, 164 (4th Cir. 2009); *Singh v. Mukasey*, 543 F.3d 1, 5 (1st Cir. 2008); *Parussimova v. Mukasey*, 533 F.3d 1128, 1134 (9th Cir. 2008), *amended and superseded on denial of reh'g by* 555 F.3d 734, 741 (9th Cir. 2009). *Cf. Ndayshimiye v. Att'y Gen.*, 557 F.3d 124, 129 (3d Cir. 2009) (concluding "that the BIA's interpretation of the 'one

central reason' standard is in error only to the extent that it would require an asylum applicant to show that a protected ground for persecution was not 'subordinate' to any unprotected motivation"). In *J–B–N*, the BIA interpreted "one central reason" to mean "the protected ground cannot play a minor role in the alien's past mistreatment or fears of future mistreatment. That is, it cannot be incidental, tangential, superficial, or subordinate to another reason for harm." *J–B–N*, 24 I. & N. Dec. at 214.

To reverse the BIA, the record must establish that any reasonable adjudicator would be compelled to conclude that one of the central reasons the Maoists targeted Mr. Dallakoti was because of his family's or his own political beliefs. There is no such evidence. Instead the record contains scant and inconsistent testimony about political opinions – not the compelling evidence required to overturn the BIA's finding "that the Maoists' threats were motivated by the ability of [Mr. Dallakoti] to supply needed financial resources." Admin. R. at 8. As the BIA found, Mr. Dallakoti "himself testified that he believed he was a target because his . . . gasoline station [] was successful." *Id.* at 8. And the "failure to satisfy the burden of proof for asylum . . . necessarily constitutes a failure to meet the more stringent burden of proof for restriction on removal." *Ba v. Mukasey*, 539 F.3d 1265, 1271 (10th Cir. 2008).

Last, "[t]o receive the protections of the CAT, an alien must demonstrate that it is more likely than not that he will be subject to torture by a public official,

or at the instigation or with the acquiescence of such an official." *Sidabutar*, 503 F.3d at 1125 (quotation omitted). Because there is no such evidence in the record, the BIA correctly affirmed the IJ's decision denying Mr. Dallakoti's request for CAT relief.

III.

Mr. Dallakoti also argues that the BIA erred in denying his motion to remand for consideration of newly submitted material. "We review the denial of a motion to remand for an abuse of discretion." *Witjaksono*, 573 F.3d 978-79. "An abuse of discretion occurs when the BIA's decision provides no rational explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or conclusory statements." *Id*. at 979 (quotation omitted). In concluding that Mr. Dallakoti's new information was cumulative and/or insufficient to require a remand, the BIA did not abuse its discretion. Nor did the BIA abuse its discretion in concluding that Mr. Dallakoti failed to explain why at least part of this information was not discovered or presented at his March 2008 hearing.

The petition for review is DENIED.