FILED
United States Court of Appeals
Tenth Circuit

August 16, 2013

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

LAKPA SHERPA,

      Petitioner,

v.

ERIC H. HOLDER, JR., United States
Attorney General,

      Respondent.

No. 12-9547
(Petition for Review)

ORDER AND JUDGMENT[*]

Before **HOLMES**, **HOLLOWAY**, and **BACHARACH**, Circuit Judges.

Lakpa Sherpa, a native and citizen of Nepal, petitions for review of the

decision of the Board of Immigration Appeals ("BIA") affirming an order of the

immigration judge ("IJ") that denied his application for asylum, withholding of

removal, and protection under the Convention Against Torture ("CAT"). Exercising

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

jurisdiction under 8 U.S.C. § 1252, we grant the petition and reverse and remand to the BIA for further proceedings.

I. BACKGROUND

Mr. Sherpa was born in 1960 in Nepal, and has a wife and five children. He is a member of the Nepali Congress Party ("NCP"), which promotes democratic ideals, and was an elected leader in his village under the NCP banner. Among his duties as a village leader, Mr. Sherpa worked to remedy poverty, promoted tourism, and helped create jobs. This included managing a development project for the construction of a teacher's residence for a local school. The Maoists, a Communist guerilla organization, opposed the NCP's agenda as well as Mr. Sherpa's association and activities as an NCP leader. Mr. Sherpa apparently carried much clout in his village, and taught the villagers about the dangers of Maoist ideology while instructing them not to join the Maoists. The Maoists frequently tried to recruit Mr. Sherpa into their organization, including offering him a local leadership position, but he refused. They also sought money from Mr. Sherpa, but he never gave them any. For his actions, the Maoists allegedly often threatened to attack and kill him.

In October 2006, a group of Maoists broke into Mr. Sherpa's home and demanded he hand over the funds designated for the teacher's residence project. He again refused. The Maoists then tied him up and severely beat him, causing injuries to his chest and legs that required eventual hospitalization. They also beat Mr. Sherpa's wife, though she was not hospitalized. Villagers eventually came to

- 2 -

Mr. Sherpa's rescue and drove the Maoists out. Before they left, however, the Maoists threatened to kill Mr. Sherpa the next time they saw him. He thus decided to flee to a different village where he sought refuge with a friend, Daputi Sherpa, and shortly thereafter fled for Kathmandu.

In Kathmandu, Mr. Sherpa requested help from the NCP, Nepal's controlling political party at the time, but they were unable to help him. In January 2007, after nearly three months in Kathmandu, Mr. Sherpa entered the United States on a non-immigrant (B-2) visitor visa. In July 2007, after overstaying his visa, Mr. Sherpa filed an application for asylum, withholding of removal, and protection under the CAT, but was denied. The government then commenced removal proceedings.

In July 2009, a hearing was held before an IJ regarding Mr. Sherpa's renewed applications for relief. He testified about his active membership in the NCP, efforts to discourage villagers from joining the Maoists, the Maoists' frequent threats and extortion attempts, and the beating he received. He testified that since his departure, his home had been burned down and his friend, Daputi Sherpa, had been kidnapped—and possibly killed—for providing refuge to him. Mr. Sherpa's family, who moved to Kathmandu shortly after he fled, remains in Kathmandu. They have been unharmed since that time, although Mr. Sherpa testified that they do not go out at night and are at times in hiding.

Two witnesses testified on Mr. Sherpa's behalf. A professor of anthropology and history testified that Mr. Sherpa's account of what happened was consistent with political conditions in Nepal. She also believed that for Maoists to accompany their extortion attempts with physical violence, other factors beyond the acquisition of money would be involved that are typically political in nature. A clinical social worker testified that after interviewing Mr. Sherpa, she concluded he showed signs of acute stress disorder and post-traumatic stress disorder. She testified that as a consequence, Mr. Sherpa had difficulty recalling the events that led to his departure from Nepal in any specific, linear fashion.

The IJ denied Mr. Sherpa's request for relief, finding that he was a credible witness but that the Maoists were motivated by obtaining his funds and having him join their organization rather than on account of his political beliefs. The IJ thus concluded that, with respect to Mr. Sherpa's asylum and withholding of removal application, he failed to implicate any of the protected grounds upon which past persecution or a well-founded fear of future persecution must be based. The IJ also denied Mr. Sherpa's request for protection under the CAT after finding that there was no evidence he would be tortured by, or with the acquiescence of, the Nepalese government. The BIA adopted and affirmed the IJ's decision. Mr. Sherpa now appeals.

II.     DISCUSSION

We review legal questions de novo, but "[a]gency findings of fact are reviewed under the substantial evidence standard." *Karki v. Holder*, 715 F.3d 792, 800 (10th Cir. 2013) (internal quotation marks omitted).  Under this standard, "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."  8 U.S.C. § 1252(b)(4)(B).

An applicant seeking asylum must demonstrate that his "race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for persecuting the applicant." *Dallakoti v. Holder*, 619 F.3d 1264, 1268 (10th Cir. 2010) (internal quotation marks omitted).  A "central reason" means that the protected ground cannot have played a minor role in the applicant's past treatment or fear of future harm.  *Id*. (holding that the protected ground "cannot be incidental, tangential, superficial, or subordinate to another reason for harm." (internal quotation marks omitted)).

There are three ways to demonstrate refugee status: (1) establish a well-founded fear of future persecution; (2) establish past persecution, which creates a rebuttable presumption of a well-founded fear of future persecution; and (3) establish past persecution so severe that it demonstrates compelling reasons for being unwilling or unable to return.  *Krastev v. INS*, 292 F.3d 1268, 1270-71 (10th Cir. 2002).

- 5 -

On appeal, Mr. Sherpa argues that the IJ erred in failing to find a nexus between his past persecution—specifically the severe beating and frequent death threats—and his political opinion. Mr. Sherpa alleges that as a result, the IJ erred in concluding that he failed to demonstrate past persecution and thus a presumptively well-founded fear of future persecution. We agree.

The IJ concluded that rather than political opinion, the Maoists were motivated by their desire to extort money from Mr. Sherpa and to recruit him to their cause, neither of which necessarily qualifies as a protected ground. But the record compels the conclusion that Mr. Sherpa's political opinion, expressed through his affiliation with the NCP as an active, elected leader, was at least one central reason for the Maoists' actions. Maoist ideology opposes villagers' educational development, which is precisely the type of project that Mr. Sherpa was coordinating on behalf of the NCP when he was beaten, and the Maoists' frequent harassment of Mr. Sherpa illustrates they were aware of and unhappy with his involvement. Mr. Sherpa also informed the villagers about "how the Maoist live, what is their principle [sic]," Admin. R. at 145, in contrast to the NCP's democratic agenda. He discouraged the villagers from joining the Maoists, thus demonstrating that his own outspoken political opinion opposed the Maoists'. *See INS v. Elias-Zacarias*, 502 U.S. 478, 482 (1992) ("political opinion" means persecution on account of victim's political opinion, not the persecutor's).

Furthermore, an expert witness testified that extortion attempts are not typically accompanied by physical violence unless an additional factor like politics comes into

- 6 -

play. In light of Mr. Sherpa's public association with the NCP and his outspoken opposition against the Maoists, this testimony reinforces the existence of a causal connection between Mr. Sherpa's persecution and his political opinion. Indeed, the expert witness testified that in her opinion, Mr. Sherpa's membership in the NCP and village leadership activities were the primary reasons for his persecution by the Maoists. However, the IJ appears to have ignored this substantial evidence in relation to the Maoists' beating of Mr. Sherpa, relying instead on the fact that they also tried to extort and recruit him. As we stated in another case involving a Nepali seeking asylum from the Maoists, such "extortion and recruitment efforts do not negate Petitioner's testimony that he was specifically targeted and harassed based on his political opinion." *Karki*, 715 F.3d at 802; *see also Espinosa-Cortez v. Att'y Gen.*, 607 F.3d 101, 113 (3rd Cir. 2010) (although petitioner was initially targeted due to persecutor's recruitment efforts, "a reasonable adjudicator would be compelled to conclude that the [persecutor], by threatening a government-affiliated person after that person made his anti-[persecutor] views known, had threatened persecution at least in part on account of the victim's political beliefs.").

The government's argument relies largely on *Elias-Zacarias*, in which the Supreme Court held that coercive recruitment into a guerilla organization does not establish persecution on account of political opinion. The government contends that the Maoists' attempts to extort and recruit Mr. Sherpa similarly fail to amount to political persecution. However, unlike in *Elias-Zacarias*, there is evidence here of more than

Mr. Sherpa's refusal to accede to forcible recruitment efforts. *Cf.* 502 U.S. at 482 (1992) (noting that a person may resist recruitment for a variety of reasons and the petitioner failed to show a political motive for his refusal). Mr. Sherpa did show a political motive through his role as an elected official in the Maoists' chief opposition party, advocating democratic and economic principles contrary to the Maoists, and convincing other villagers not to join their organization. His steadfast refusals to join the Maoists were evidently a result of his political principles, as he testified, "I am a Nepali Congress Party believer . . . I will never go and join the Maoists, even though they kill me . . . I will never do that in my life." Admin. R. at 145-146. As such, the record as a whole does not support the IJ's conclusion that the Maoists were only motivated by their desire to extort or recruit Mr. Sherpa.

As to Mr. Sherpa's claim that he is eligible for protection under the CAT, he is obligated to show that "it is more likely than not that he will be subject to torture by a public official, or at the instigation or with the acquiescence of such an official." *Cruz–Funez v. Gonzales*, 406 F.3d 1187, 1192 (10th Cir. 2005) (brackets and internal quotation marks omitted). However, he has provided virtually no record support to meet this standard.

Accordingly, we affirm the denial of Mr. Sherpa's CAT claim. But we reverse his claims for asylum and withholding of removal, and remand for further proceedings consistent with this order and judgment.

Entered for the Court


Jerome A. Holmes
Circuit Judge