FILED
United States Court of Appeals
Tenth Circuit

December 6, 2013

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

DORJE SHERPA,

        Petitioner,

v.

ERIC H. HOLDER, JR., United States
Attorney General,

        Respondent.

No. 13-9552
(Petition for Review)

**ORDER AND JUDGMENT**[*]

Before **GORSUCH**, **ANDERSON**, and **HOLMES**, Circuit Judges.

Petitioner Dorje Sherpa petitions for review of the decision of the Board of

Immigration Appeals (BIA) affirming the decision of an immigration judge (IJ)

denying his application for asylum, restriction on removal, and protection under the

United Nations Convention Against Torture (CAT). We hold that petitioner has

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

failed to carry the heavy burden placed on those challenging adverse asylum determinations, and we therefore deny the petition for review.

## I.  Background

Petitioner is a native and citizen of Nepal.  He was admitted to the United States in November 2007 with a temporary worker visa and was authorized to stay for six months.  He overstayed his visa and filed his application for asylum or other relief from removal.  Removal proceedings were subsequently initiated against him. He conceded removability, but testified at the hearing that he had been persecuted in the past and would be subject to future persecution in Nepal because of his political opinion, imputed political opinion, and membership in a particular social group, the Sherpa tribe.

### A.  Factual Background

Petitioner was born in 1987 in a village, but his parents made a lot of money selling products from their farm, and they bought a second home in Kathmandu so that petitioner and his brother could attend better schools.  Petitioner wrote on his asylum application that he lived in Kathmandu from January 1995 until November 2007 and that he attended Hiralal college in Kathmandu from July 2005 until March 2007.

Petitioner's father became a member of the Nepali Congress Party in 1992 and helped candidates get elected.  The Maoists seized the family's village home in 1998, a few months after petitioner's father refused to give them money.  Petitioner joined

the affiliated youth organization, the Nepali Student Union, in May 2002 and received training in the Nepali Congress Party's ideology to oppose the Maoists because they were terrorists. He testified that in 2002, he informed the army of Maoist activities in the villages and, as a result, the army took action against the Maoists, killing some of them. The Maoists later found out his name and started looking for him. He did not know how the Maoists learned that he had informed on them, but they went to his family's home in Kathmandu in 2005. Petitioner was not home at the time, but his parents were, and the Maoists threatened them and told them that they would kill him. Petitioner's father called him and warned him not to come home, and the Maoists later made additional threats to his parents.

Petitioner stayed in Nepal for two more years after his parents received the threat on his life. When he was asked why he remained in Nepal, he explained that he was dependent on his parents and had no opportunity to leave Nepal until a friend of his father's helped him get a job in the United States. He said that he stayed in hiding in Nepal with his family and friends, moving from place to place. He explained that he did not write down his friends' addresses on his asylum application because there were too many of them and there was no room on the form.

When petitioner was asked why the Maoists could not have identified him in Nepal, considering that he worked for his father's small business making deliveries to customers on a motorcycle out in public, he explained that he wore a helmet partially covering his face and did not work on a regular basis. When asked why the

Maoists could not have found him at his college, he said that he stopped going to college in March 2006, when he learned that the Young Communist League (YCL, the Maoists' youth organization) had found out he was attending school, but he wrote on his asylum application that he had attended college until March 2007 because he was still admitted.

He testified that some Maoists threatened him at Hiralal campus once, but he managed to run away. He also testified that in September 2006, he was beaten and injured by ten-to-twelve YCL members in a public youth campus when he went there for some training. The Maoists came there to break up the meeting and said that he should be killed because he had informed on them. Petitioner was beaten unconscious and spent two days in the hospital, but he lost the documentation during the time when he moved from place to place. He was treated with a bandage, and he showed the IJ a three-inch scar on the front of his right shin.

Petitioner's counsel identified the asserted particular social group of which petitioner was a member as "Sherpa," and explained that the Sherpas were targeted by Maoists because they are tracking guides and were known to have money. Petitioner testified that the Sherpas were one of several tribes with Mongolian features, so they could not be identified as Sherpas merely by appearance. He said that the Maoists target the Sherpas for donations because they are in business. But he admitted that some Sherpas are Maoists, and that the Maoists solicit everyone either for donations or to recruit their children as workers.

B.  The Administrative Decisions

At the conclusion of the July 15, 2011, hearing, the IJ denied petitioner any relief from removal based on his political opinion or membership in a particular social group.  Petitioner appealed to the BIA, which agreed with the IJ's conclusions with respect to the issues raised and dismissed the appeal.  The BIA agreed that the incidents about which petitioner testified, taken in the aggregate, failed to establish that he was persecuted in the past, and he was therefore not entitled to a presumption of a well-founded fear of future persecution.  The BIA further agreed that petitioner failed to show that his asserted fear of future persecution was objectively reasonable and based on credible evidence that he would be singled out for persecution.  The BIA also agreed that petitioner's documentary evidence was insufficiently authenticated.  In addition, the BIA agreed that petitioner failed to establish a nexus between his alleged fear of persecution and his actual or imputed political opinion, rather than his actions as an informant against the Maoists.  The BIA concluded that because petitioner failed to meet the standard for asylum, he necessarily failed to meet the higher standard for restriction on removal.  Petitioner filed this petition for review.

II.  Discussion

"In our review of the agency's decision, we decide purely legal questions *de novo*." *Ritonga v. Holder*, 633 F.3d 971, 974 (10th Cir. 2011).  "Agency findings of fact are reviewed under the substantial evidence standard." *Id.*  Thus, "the

administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). Under this standard, "[o]ur duty is to guarantee that factual determinations are supported by reasonable, substantial and probative evidence considering the record as a whole." *Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006) (internal quotation marks omitted). While we review the BIA's decision, not the IJ's, we "may consult the IJ's opinion to the extent that the BIA relied upon or incorporated it." *Sarr v. Gonzales*, 474 F.3d 783, 790 (10th Cir. 2007). "Finally, our review is confined to the reasoning given by the [agency], and we will not independently search the record for alternative bases to affirm." *Elzour v. Ashcroft*, 378 F.3d 1143, 1150 (10th Cir. 2004).

Because petitioner applied for asylum following the enactment of the REAL ID Act in 2005, his burden of proof is set forth in 8 U.S.C. § 1158(b)(1)(B)(i). To qualify for asylum, he was required to prove that he is a refugee, which requires proof that his "'race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for persecuting [him].'" *Dallakoti v. Holder*, 619 F.3d 1264, 1268 (10th Cir. 2010) (quoting § 1158(b)(1)(B)(i)).

Petitioner may establish refugee status in three ways: (1) by showing a well-founded fear of future persecution; (2) by showing past persecution, which creates a rebuttable presumption of a well-founded fear of future persecution; or

- 6 -

(3) by showing "past persecution so severe as to demonstrate compelling reasons for being unwilling or unable to return," even without any danger of future persecution. *Krastev v. INS*, 292 F.3d 1268, 1270-71 (10th Cir. 2002) (internal quotation marks omitted). But "the BIA [has] interpreted 'one central reason' to mean 'the protected ground cannot play a minor role in the alien's past mistreatment or fears of future mistreatment. That is, it cannot be incidental, tangential, superficial, or subordinate to another reason for harm.'" *Dallakoti*, 619 F.3d at 1268 (quoting *In re J-B-N- & S-M-*, 24 I. & N. Dec. 208, 214 (BIA 2007)). As a result, even if petitioner has shown that *his* actions were politically motivated, "he would need to make the additional showing that the [Maoists] would 'persecute him *because of* that political opinion, rather than'" because of some other, unprotected reason. *Rivera-Barrientos v. Holder*, 666 F.3d 641, 647 (10th Cir. 2012) (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 483 (1992)).

To qualify for restriction of removal under the Immigration and Nationality Act (INA), 8 U.S.C. § 1231(b)(3), an applicant must "establish a clear probability of persecution on account of one of the statutorily protected grounds." *Uanreroro*, 443 F.3d at 1202 (internal quotation marks omitted). "Applicants who cannot establish a well-founded fear under asylum standards will necessarily fail to meet the higher burden of proof required for [restriction on] removal under the INA. . . ." *Id.*

Petitioner argues that the BIA and IJ erred in concluding that he failed to show past persecution, a well-founded fear of future persecution, and a nexus between the

alleged persecution and his political opinion, imputed political opinion, or membership in the Sherpa tribe. He also argues that the BIA and IJ erred in concluding that he had not established his entitlement to relief from removal under the INA or the CAT. We find no error.

We note at the outset that petitioner did not raise any arguments to the BIA concerning his membership in the Sherpa tribe or related to his CAT claim, nor did the BIA sua sponte address those claims. As a result, we lack jurisdiction to consider his unexhausted arguments regarding those issues. *See Sidabutar v. Gonzales*, 503 F.3d 1116, 1118-20 (10th Cir. 2007). Moreover, we need not address his arguments that he showed that he suffered past persecution or had a reasonable fear of future persecution. Even if he made the required showing on those points, his claims for asylum and restriction on removal also failed because he did not show that the Maoists targeted him in the past or would target him in the future *because of* his political beliefs or imputed political beliefs. Unless the record "establish[es] that any reasonable adjudicator would be compelled to conclude that one of the central reasons the Maoists targeted [petitioner] was *because of*" a protected ground, he is not entitled to relief on appeal. *Dallakoti*, 619 F.3d at 1268 (emphasis added).

Petitioner's vague evidence fails to satisfy the high standard that applies to his appeal. When he testified about being beaten by a group of Maoists, he reported that they said he should be killed because he had informed on them; he did not suggest that they were motivated by his political beliefs. *See* Admin. R. at 219-20. There is

- 8 -

no other reference to the Maoists' alleged motivation in the record, and we are not compelled to conclude that he established the required nexus between the alleged persecution and a protected ground. *See Adhiyappa v. INS*, 58 F.3d 261, 266-68 (6th Cir. 1995) (distinguishing "whether the persecution an alien fears is on account of his political opinion or, on the other hand, on account of his actions or inactions," as discussed in *Elias-Zacarias*, 502 U.S. at 481, and concluding based on the record before the court that "it was [the petitioner's] status as an informant, not his political opinion, that spurred [the terrorists'] hatred"); *cf. Karki v. Holder*, 715 F.3d 792, 803 (10th Cir. 2013) (noting that "[u]nder *Elias-Zacarias*, an individual's refusal to join an organization is insufficient in itself to demonstrate that the organization's persecution was based on the individual's actual or imputed political opinion, rather than retaliation for the individual's resistance").

The petition for review is denied.

Entered for the Court


Jerome A. Holmes
Circuit Judge