**Leoncio Edgar CONDOR–ARAUJO, Petitioner,**

v.

**Loretta E. LYNCH, United States Attorney General, Respondent.**

No. 15–9559.

United States Court of Appeals, Tenth Circuit.

Feb. 1, 2016.

Reza Athari, Reza Athari & Associates, Las Vegas, NV, T. Laura Lui, Reza Athari & Lui, Salt Lake City, UT, for Petitioner.

Sharon Michele Clay, United States Department of Justice Office of Immigration Litigation, General Counsel, Virginia Lum, Washington, DC, DOH/EOIR/BIA, Attn: Certification Unit, Falls Church, VA, John Longshore, Director, DHS Immigration and Customs Enforcement, Centennial, CO, for Respondent.

Before HARTZ, BALDOCK, and MORITZ, Circuit Judges.*

### ORDER AND JUDGMENT**

BOBBY R. BALDOCK, Circuit Judge.

Petitioner Leoncio Edgar Condor–Araujo (Condor) left Peru and came to the United States in May 2007. In October 2009, the Department of Homeland Security (DHS) initiated removal proceedings against him as an alien who was present in the U.S. without being admitted or paroled. Condor conceded the charge of inadmissibility, but requested an opportunity to apply for asylum, withholding of removal (now called restriction on removal), and

protection under Article III of the United Nations Convention Against Torture. The Immigration Judge (IJ) denied all relief and the Board of Immigrations Appeals (BIA) upheld the decision. Condor petitioned us to review the BIA's decision regarding his applications for restriction on removal and protection under the Convention Against Torture. We exercise jurisdiction under 8 U.S.C. § 1252(a)(1) and deny his petition for review.

### I.

Condor is a native and citizen of Peru from a little town called Ccollpa. Around 1985 or 1990, the terrorist group Shining Path invaded the area and assassinated people. The terrorist group sought to kill Condor's father because he was a political authority figure. Condor's uncles also fought against the terrorists. These confrontations with the terrorists lasted for approximately twenty years.

Condor testified that, when he was young, he witnessed members of Shining Path gruesomely kill his uncles. The terrorists told town members to gather at the town's plaza and then brought Condor's uncles out, placed their heads on a rock, and smashed them with another rock, killing them. The Shining Path members told the crowd that this was how they killed snitches.

Beginning in 1985, Condor and his family moved from town to town to avoid Shining Path and find work. In 2000, Condor's father ran for mayor of one of the districts, but because of the continuous threats, the

---

** This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R.App. P. 32.1 and 10th Cir. R. 32.1.

family had to escape. In 2006, he and his family tried to live in the Amazon jungle for six months. At some point Condor and his father traveled to Lima on the other side of the Andes Mountains to look for work, but Condor testified he could not report Shining Path's conduct to authorities in Lima because "over there politics is very different. They don't, they don't listen to you. If you have money, then justice is done. It's not like here in the United States."

The government of Peru characterized Condor as a special victim of terrorism. According to Condor, this "infuriated the terrorists because they knew, they knew that we were telling on them. They referred to us as snitches and those documents [for special victims of terrorism] hurt us even more." Condor revealed that the Peruvian army did not offer him protection. He testified: "It was worse. The terrorists from one, from—in one hand the terrorists would threaten the farmers. The army would do the same exact thing. They would rape the women in front of their spouses. They would just take the little girls. It was atrocious. There was no support. You were left to your own fate."

Condor worked on coffee plantations for a time. The owners pressured him to plant and gather cocaine, but he refused. Condor claims he left Peru because drug dealers were looking for him, but he did not report them because he feared being considered a "snitch and put on a black list."

Condor testified that he felt he could not move to another part of Peru to avoid the drug dealers or members of Shining Path because his parents are very old and he is responsible for taking care of them. Condor left Peru in 2007, entered the United States in Texas, and has been living and working in Utah. He testified that his parents, wife, and children are safe "in a little town that nobody knows about" in Peru, but he is afraid to return to Peru and would be killed if he showed his face there.

## II.

Condor does not challenge the denial of his application for asylum, but only challenges the denial of his restriction on removal and relief under the Convention Against Torture. A single BIA board member decided the merits of Condor's appeal in a brief order; thus, the brief order constitutes the final order of removal under 8 U.S.C. § 1252(a), and "we will not affirm on grounds raised in the IJ decision unless they are relied upon by the BIA in its affirmance," although "we are not precluded from consulting the IJ's more complete explanation of those same grounds." *Uanreroro v. Gonzales,* 443 F.3d 1197, 1204 (10th Cir.2006).

"We review the BIA's legal determinations de novo and its findings of fact for substantial evidence." *Dallakoti v. Holder,* 619 F.3d 1264, 1267 (10th Cir.2010). Under the substantial-evidence standard, factual findings are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Ritonga v. Holder,* 633 F.3d 971, 974 (10th Cir.2011) (internal quotation marks omitted).

### 1. Restriction on Removal

Condor is entitled to a restriction on removal if he establishes his "life or freedom would be threatened" in Peru because of his "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). Condor may create a rebuttable presumption by showing either (1) he was subject to past persecution or (2) it is more likely than not he will be persecuted on account of one of the protected grounds.

## A. Past Persecution

■ If Condor has suffered past persecution in Peru on account of one of the protected grounds, it is presumed his life or freedom would be threatened in the future. *See* 8 C.F.R. § 1208.16(b)(1). "[W]e have held that a finding of persecution requires the infliction of suffering or harm upon those who differ (in race, religion, or political opinion) in a way regarded as offensive and must entail more than just restrictions or threats to life and liberty." *Wiransane v. Ashcroft*, 366 F.3d 889, 893 (10th Cir.2004) (internal quotation marks omitted). "In this circuit, the ultimate determination whether an alien has demonstrated persecution is a question of fact, even if the underlying factual circumstances are not in dispute and the only issue is whether those circumstances qualify as persecution." *Vicente–Elias v. Mukasey*, 532 F.3d 1086, 1091 (10th Cir.2008).

The BIA concluded Condor did not suffer harm amounting to persecution, "despite the fact that the respondent and his family had to move to different locations within Peru to avoid the Shining Path[.]" Admin. R. at 4. The BIA pointed to the IJ's decision, in which the IJ noted "[t]here is no evidence that [Condor] was ever physically harmed by anyone in Peru and the respondent testified that he was not personally harmed." Admin. R. at 58. Condor points out the IJ and BIA failed to address the Shining Path's killing of his two uncles. Witnessing his uncles' gruesome deaths was, no doubt, a traumatic experience, but Condor's testimony does not connect that incident to persecution against Condor himself. Even if some evidence *supports* a finding of past persecution, the record does not *compel* such a finding.

## B. Probability of Future Persecution

■ Although Condor has not shown past persecution, he may still demonstrate his life or freedom would be threatened in the future if he can establish it is more likely than not he would be persecuted on a protected ground upon removal to Peru. 8 C.F.R. § 1208.16(b)(2). Condor cannot, however, demonstrate such future threat if the IJ finds he can avoid a future threat to his life or freedom by relocating to another part of Peru and, under all the circumstances, it would be reasonable to expect him to do so. 8 C.F.R. § 1208.16(b)(2). Because Condor has not established past persecution, he bears the burden of establishing it would not be reasonable for him to relocate, unless the persecutor is a government or is government-sponsored. 8 C.F.R. § 1208.16(b)(3)(i).

The BIA agreed with the IJ that Condor "did not establish that he faces a clear probability of future persecution." Admin. R. at 4. It noted Condor's "family, including his father, has relocated within Peru, and has continued to live in Peru without harm." *Id.* Further, the BIA found the evidence did not show it was more likely than not Condor would be persecuted on a protected ground upon returning to Peru. *Id.* The IJ's decision explains these grounds more fully. For example, although Condor asserts drug dealers were looking for him, the IJ noted "they were looking for him after the respondent refused to help them with their coca production in the jungle. There is no evidence that the drug dealers have interest in harming him because of race, religion, nationality, political opinion or membership in a particular social group." Admin. R. at 58.

Substantial evidence supports the BIA's determination that Condor could relocate to another region of Peru to avoid persecution. As the IJ noted,

the problems that the respondent has had with drug dealers and the Shining

Path have all occurred on one side of the Andes, the eastern side. The State Department report names the regions that are currently emergency zones and the respondent and his family have had problems in those regions. There are other regions of Peru. To the west there is the capital city of Lima. The respondent went to Lima looking for work. He testified that he did not have problems in Lima like he did in the eastern part of Peru.

The respondent has argued that the economic situation of Peru makes it more advantageous for the respondent to relocate to the United States instead of to another part of Peru. However, the Court is not persuaded that the economic situation in Peru is so dire that internal relocation should not have been a method for the respondent to avoid persecution or harm at the hands of the Shining Path or drug dealers.

The respondent also argued that the high level of crime in Peru makes internal relocation unavailable for him. That he, therefore, had to travel a great distance to the United States in order to avoid the Shining Path and drug dealers in the eastern part of Peru. The Court is not persuaded. The Court did not receive persuasive evidence that the level of crime in other parts of Peru is so high and intolerable that the respondent could not relocate to other parts of Peru, for example, the capital city of Lima. Admin. R. at 59. Upon reviewing the Administrative Record, we conclude the evidence does not compel a different finding. Particularly because Condor's family, including his father, has been safe in a small town since he left, we conclude substantial evidence supports the BIA's determination that Condor could reasonably relocate within Peru to avoid any future persecution.

## 2. Convention Against Torture

The burden of proof is on Condor to establish it is more likely than not that he would be tortured if removed to Peru. 8 C.F.R. § 1208.16(c)(2).

Torture is defined as any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

8 C.F.R. § 1208.18(a)(1). "Acquiescence of a public official requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity." 8 C.F.R. § 1208.18(a)(7).

The BIA rested on the IJ's reasons for denying relief under the Convention Against Torture. The IJ noted that Condor "does not fear that the Peruvian government would harm him. He fears that terrorists, the Shining Path, would harm him. He also fears criminals, drug dealers." Admin. R. at 60. On this record, we agree. Accordingly, we hold the BIA's determination is supported by substantial evidence.

## CONCLUSION

Because substantial evidence supports the BIA's conclusions on Condor's application for a restriction on removal and pro-

tection under the Convention Against Torture, we deny his petition for review.