**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**November 3, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

_____

JAIME ARREDONDO HERNANDEZ,

    Petitioner,

v.

MERRICK B. GARLAND,
United States Attorney General,

    Respondent.

No. 22-9513
(Petition for Review)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **McHUGH**, **MORITZ**, and **CARSON**, Circuit Judges.

_____

Jaime Arredondo Hernandez[1] is a Mexican citizen.  An immigration judge

ordered that he be removed to Mexico and denied his application for protection under

the Convention Against Torture.  The Board of Immigration Appeals (Board)

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] Petitioner refers to himself in his briefs as Mr. Arredondo, so we will use that name as well.

dismissed his appeal.  He now petitions for review of the Board's decision, and we deny his petition.

## Background

Mr. Arredondo lived in Reynosa, a city near the United States border in the Mexican state of Tamaulipas.  "Tamaulipas, a key corridor for smuggling drugs and migrants to the United States, has long been plagued by cartel violence."  Admin. R. at 542.

The violence in Tamaulipas reached Mr. Arredondo several times, according to evidence he presented to the immigration judge.  Cartel members assaulted and robbed him one day on his way to work.  Later, when he worked on a project to help people with low incomes, armed cartel members detained him, beat him up, held a gun to his head, and threatened to kill him.  They brought him to a leader of the Gulf Cartel, who told him he "was doing [his] job wrong" by helping people in need rather than "people like them."  *Id.* at 113.  As a result of this confrontation, Mr. Arredondo resigned from his position.

Mr. Arredondo also worked at his family's gym as a personal trainer.  One of his clients, a man named Elias Garza Garcia, was a leader of the Gulf Cartel, though Mr. Arredondo did not yet know it.  Mr. Arredondo agreed to accompany Mr. Garcia to Mexico City for a surgery.  During the trip federal agents arrested them for possessing marijuana, methamphetamine, and a firearm.  Mr. Arredondo pleaded guilty to charges stemming from the arrest.  Yet he denied guilt in his testimony to the immigration judge.  He pleaded guilty, he said, because prison guards had

coerced him to do so through torture—hitting his hands with wood, breaking his fingers, and delivering electric shocks to his genitals and head. He received a six-year sentence, and Mr. Garcia sent cartel members to beat and torture him in prison.

After his release from prison, Mr. Arredondo returned to Reynosa, and his problems with the cartels continued. Armed men came to his family's gym and threatened him and his family on behalf of Mr. Garcia. Two men tried to kidnap him as he returned home from the gym. And members of the Scorpions Cartel kidnapped him, apparently mistaking him for Mr. Garcia.[2] After the kidnapping, Mr. Arredondo and his wife went to Juarez until he decided to cross the border to the United States.

In removal proceedings, Mr. Arredondo applied for protection under the Convention Against Torture.[3] An applicant for relief under the Convention Against Torture bears the burden to prove "it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). The immigration judge must consider all evidence bearing on the possibility of future torture, including evidence of past torture suffered by the applicant, evidence that "the applicant could relocate to a part of the country of removal where he or she is

---

[2] Mr. Garcia had apparently coerced Mr. Arredondo—by threatening to kill his father and brothers—to pretend to be Mr. Garcia when they appeared before the press during their arrest.

[3] He also applied for asylum and withholding of removal. The immigration judge denied those applications. The Board concluded that Mr. Arredondo waived any challenge to those denials, and he does not pursue the asylum and withholding claims before us. So, we limit our discussion to his claim under the Convention Against Torture.

not likely to be tortured," evidence of "gross, flagrant or mass violations of human rights within the country of removal," and evidence describing the "conditions in the country of removal." § 1208.16(c)(3).

The immigration judge denied Mr. Arredondo's application for protection under the Convention Against Torture. The immigration judge assumed that Mr. Arredondo had been tortured by prison guards but noted that past torture does not create a presumption of future torture. And the immigration judge found that Mr. Arredondo could relocate to another part of Mexico where he would not likely be tortured. Although the immigration judge recognized that some instances of torture occur in Mexico, he found that human-rights violations in Mexico are not so gross, flagrant, or mass that Mr. Arredondo would likely be tortured there.

The Board dismissed Mr. Arredondo's appeal, finding he did not establish that he will more likely than not be tortured if he returns to Mexico.

### *Discussion*

A single Board member decided Mr. Arredondo's appeal in a brief order, so we review the Board's decision and any parts of the immigration judge's decision on which it relies. *See Dallakoti v. Holder*, 619 F.3d 1264, 1267 (10th Cir. 2010). We review the Board's factual findings for substantial evidence, meaning that we will treat those findings as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* (internal quotation marks omitted).

Mr. Arredondo argues that the Board erred when it found that he would not likely be tortured if he returns to Mexico. He highlights the torture, assaults, threats,

4

and kidnapping he suffered there in the past. That evidence is relevant, of course, but it does not create a presumption of future torture. *See Niang v. Gonzales*, 422 F.3d 1187, 1202 (10th Cir. 2005). And the agency found that Mr. Arredondo could relocate to another part of Mexico where he would not likely be tortured. This finding is supported by the lack of evidence, noted by the agency, showing that the prison guards who tortured Mr. Arredondo would be able to torture him again in other parts of Mexico. The finding is also supported by evidence that "the security situation varies drastically across the country, and that drug cartels are most active in the northern border region and along the Pacific coast." Admin. R. at 515 (internal quotation marks omitted). Although Mr. Arredondo claimed that the Gulf Cartel has "people everywhere," *id.* at 242, as a whole the evidence permits a reasonable conclusion that he could likely avoid torture in Mexico by relocating.

Mr. Arredondo responds that the agency ignored evidence that Mexico suffers from high rates of corruption and violent crime, including torture, that often go unpunished. But we see no reason to think the agency ignored this evidence. The immigration judge expressly said that he had "considered all evidence in the record." *Id.* at 26. And he acknowledged that there are "instances of torture in Mexico." *Id.* at 36. In any event, in the face of evidence that security issues vary throughout Mexico, the portions of the record that Mr. Arredondo now underscores do not compel the conclusion that human-rights violations in Mexico are such that it is more likely than not he will be tortured if he returns.

Contrary to Mr. Arredondo's argument, the agency's findings withstand the evidence that the Gulf Cartel "found him at his workplace, at his family business, at a nightclub, and at his home with his wife." Pet'r's Opening Br. at 29. Mr. Arredondo identifies no evidence that these events occurred outside Tamaulipas, so they do not undermine the finding that he could likely avoid torture by relocating to other parts of Mexico.

For the first time in his reply brief, Mr. Arredondo asserts that he lived in Monterrey, Juarez, Quintana Roo, and La Union. And in "each location," he says, "he was found by one of the cartels." Pet'r's Reply Br. at 4. As a result, he concludes, he cannot safely relocate to other parts of Mexico. This argument suffers from two problems. First, it comes too late because "arguments advanced for the first time in a reply brief are waived." *Eaton v. Pacheco*, 931 F.3d 1009, 1025 n.15 (10th Cir. 2019). Second, even if it were not waived, the argument appears to lack record support. Mr. Arredondo does not support the argument with citations to the record. Although we have no duty to "sift through the record" for evidence, *SIL-FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1513 (10th Cir. 1990) (internal quotation marks omitted), we have reviewed the record and found no support for this argument. The record contains evidence that Mr. Arredondo went to these four

places, but we see no evidence that the cartels "found" him there.[4]  Pet'r's Reply Br. at 4.

In sum, substantial evidence supports the Board's finding that Mr. Arredondo did not show that he will more likely than not be tortured if he returns to Mexico. Because that finding precludes Mr. Arredondo from obtaining relief under the Convention Against Torture, we need not address his remaining arguments.

### *Conclusion*

The petition for review is denied.

Entered for the Court

Carolyn B. McHugh
Circuit Judge

---

[4] Mr. Arredondo testified that Quintana Roo and La Union "are places where all the cartels are at, and they're not places where one can live."  Admin. R. at 173. That testimony stops well short of a claim that cartels found him in those places.