**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**March 24, 2023**

**Christopher M. Wolpert**
**Clerk of Court**

_____

JOSE ANTONIO GALLARDO VALDEZ,

    Petitioner,

v.

MERRICK B. GARLAND,
United States Attorney General,

    Respondent.

No. 22-9535
(Petition for Review)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **TYMKOVICH**, **BALDOCK**, and **PHILLIPS**, Circuit Judges.

_____

An Immigration Judge (IJ) denied petitioner Jose Antonio Gallardo Valdez's

application for cancellation of removal and granted him voluntary departure.  The

Board of Immigration Appeals (Board) dismissed his appeal.  Petitioner has filed a

petition for review.  We dismiss the petition in part for lack of jurisdiction and,

exercising jurisdiction under 8 U.S.C. § 1252(a)(1), deny the remainder of the

petition.

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
submitted without oral argument.  This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel.  It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

## I.    BACKGROUND

Petitioner is a native and citizen of Mexico.  In 2018, the Department of Homeland Security (DHS) initiated removal proceedings, alleging he was removable as a noncitizen who entered the United States at an unauthorized time and place. Petitioner conceded removability and applied for cancellation of removal under 8 U.S.C. § 1229b(b), claiming his removal would cause exceptional and extremely unusual hardship to his eleven-year-old daughter, I.A., who is a United States citizen.[1]

At a hearing before the IJ, Petitioner testified that I.A. was intelligent, a good student, had many friends, does not require special education classes or tutoring, spoke Spanish at home, and has no medical conditions.  Petitioner also testified, however, that when DHS detained him for a month, I.A. became very sad and could not eat, and he was unsure how I.A. would react to a long-term separation.  He explained that if he was removed, I.A. would move to Mexico with him because he is the family's primary provider.  He added that five of his brothers and four of his other children live in Mexico, and upon removal he would initially live in the city of Durango, where most of them lived.

Petitioner's wife, Maria, testified before the IJ.  She stated she has been with Petitioner for thirty-five years and the two live together with I.A. and their

---

[1] The other prerequisites for cancellation (ten years of physical presence in the United States, good moral character, and the lack of a disqualifying conviction, *see* 8 U.S.C. § 1229b(b)(1)(A)–(C)) are not at issue in this case.

2

eighteen-year-old daughter. Maria has no legal status in the United States. I.A. is a very good student, speaks some Spanish, can read and write Spanish, and is in a Spanish class. After Petitioner was detained, I.A. became very sad, withdrawn, and distant, and Maria started working part-time as a dishwasher. If Petitioner is removed, she would remain in the United States, but she would have to work more, and her eighteen-year-old daughter might also have to work while continuing her studies. However, if Maria and I.A. were struggling, they would also move to Durango, where Maria's parents live. Although Maria has two brothers in Colorado, they are unable to help her. In Mexico, I.A. might not be put in the same grade because she would have to improve her Spanish, school was more expensive, and it would be harder for her to move on past high school. Maria said she was concerned about crime in Durango and added that I.A. has never been to Mexico.

The parties stipulated that I.A. would testify consistent with her signed statement, where she praised Petitioner as a father, stated she would struggle to afford college without his assistance, and could not visit Durango, where Petitioner likely would live, because it is dangerous and a two-day bus ride from her home here.

The IJ denied cancellation. After finding Petitioner and Maria credible, the IJ found that if Petitioner was removed, I.A. would experience some sadness, related emotional disturbances, and financial limitations, but such hardships are typical of what happens "when a close family member leaves the household and the country," not the sort of "exceptional and extremely unusual hardship" the law requires. R. at 90. The IJ also found the financial impact of losing Petitioner's income could

be offset by Maria working more and by her eighteen-year-old daughter's efforts to work. The IJ further found I.A. would not experience the requisite hardship if she moved to Mexico because of the large family network there, particularly in Durango, and I.A. speaks, reads, and writes Spanish with some proficiency, although "it is likely she would have to work hard to improve her fluency." *Id.* at 91. Any limitations on educational and financial opportunities in Mexico, the IJ said, including fear of criminal elements, were neither exceptional nor extremely unusual in this case.

Petitioner appealed to the Board, arguing the IJ committed a legal error by applying only *In re Monreal-Aguinaga*, 23 I. & N. Dec. 56 (B.I.A. 2001), to the facts at issue and ignoring two later cases, *In re Andazola-Rivas*, 23 I. & N. Dec. 319 (B.I.A. 2002) and *In re Gonzalez Recinas*, 23 I. & N. Dec. 467 (B.I.A. 2002) (together, "three cases"). He also argued he had demonstrated his removal would result in exceptional and extremely unusual hardship to I.A.

The Board dismissed Petitioner's appeal. Adopting and affirming the IJ's decision, the Board cited the three cases in support of its agreement with the IJ's reasoning that Petitioner failed to show the required level of hardship. The Board wrote "separately" to reject Petitioner's argument that the IJ ignored relevant case law. R. at 3. The Board explained that although the IJ had not addressed all three cases "in the body of his decision," the Board could identify no clear factual error or any legal error in the IJ's determination that Petitioner had not demonstrated his removal would result in exceptional and extremely unusual hardship to I.A. *Id.* at 4.

4

## II.    DISCUSSION

Because a single Board member issued a brief order affirming the IJ's decision, we review the Board's decision and any parts of the IJ's decision the Board relied on.  *See Dallakoti v. Holder*, 619 F.3d 1264, 1267 (10th Cir. 2010).  "We lack jurisdiction to review the Board's discretionary decision, based on the facts of the case, whether [I.A.] will suffer an exceptional and extremely unusual hardship." *Galeano-Romero v. Barr*, 968 F.3d 1176, 1182–83 (10th Cir. 2020) (discussing 8 U.S.C. § 1252(a)(2)(B)(i)).  But under "§ 1252(a)(2)(D), we retain jurisdiction over questions of law that arise from the Board's hardship determination."  *Id.* at 1184. We review questions of law de novo.  *Dallakoti*, 619 F.3d at 1267.

Petitioner contends the IJ "ignored relevant case law because he did not analyze and *apply*" *In re Andazola-Rivas* or *In re Gonzalez Recinas* to the facts. Pet'r's Opening Br. at 12.  Petitioner argues that although the IJ's decision incorporated a written addendum containing statements of law,[2] the IJ did not meaningfully apply the relevant caselaw.  Petitioner contends the Board did not adequately account for this "omission" and therefore its decision was a "misapplication of the legal standard for exceptional and extremely unusual hardship."  *Id.* at 11.

"[W]e have jurisdiction to review a claim that the Board departed from its own adopted hardship standard, by ignoring it or favoring some other inapplicable

---

[2] The addendum cited all three cases.  *See* R. at 95.

standard." *Galeano-Romero*, 968 F.3d at 1184. But Petitioner's argument overlooks that the Board's concurrence in the IJ's decision was based on the Board's record review and consideration of all three cases, and in Petitioner's case, it is the Board's decision that we review. As the Board explained in *In re Gonzalez Recinas*, "any hardship case ultimately succeeds or fails on its own merits and on the particular facts presented," but *In re Andazola-Rivas* and *In re Monreal-Aguinaga* "are the starting points for any analysis of exceptional and extremely unusual hardship." 23 I. & N. Dec. at 469. Because the Board considered all three cases, it did not ignore its own applicable standard or favor an inapplicable standard.

To the extent Petitioner argues the Board misapplied the legal standards set out in the three cases to the facts of his case or should have compared the facts of those cases with the facts of his, we lack jurisdiction. We have held we lack jurisdiction if "the Board acknowledges its standard and exercises its discretion within the bounds of its precedents' cabining of such discretion." *Galeano-Romero*, 968 F.3d at 1183. The Board did so here. By citing the three cases, the Board identified the proper standard. And the Board concurred in the IJ's denial of cancellation for the reasons the IJ articulated. Those reasons were based on consideration of relevant hardship factors drawn from the three cases—financial burden, family support in Mexico, a child's familiarity with the Spanish language, poor economic conditions in Mexico, and reduced educational opportunities in Mexico. *See In re Gonzalez Recinas*, 23 I. & N. Dec. at 470–71 (listing "significant" hardship factors as cancellation applicant's children's ability to speak, read, and write Spanish; financial and

6

emotional difficulties arising from removal of provider of support; and family support in Mexico); *In re Andazola-Rivas*, 23 I. & N. Dec. at 323–24 (considering economic consequences, educational opportunities, family help in Mexico, and ability of non-petitioning parent to provide support); *In re Monreal-Aguinaga*, 23 I. & N. Dec. at 63–64 (listing relevant considerations as "the ages, health, and circumstances of qualifying . . . United States citizen relatives," such as "a qualifying child with very serious health issues, or compelling special needs in school," and "[a] lower standard of living or adverse country conditions in the country of return"). Because the Board acknowledged its controlling standards and exercised its discretion within the bounds of those standards, we lack jurisdiction to consider Petitioner's argument despite his attempt to frame it "as a challenge to the application of a legal standard to established facts." *Galeano-Romero*, 968 F.3d at 1184.

### III.    CONCLUSION

The petition for review is dismissed in part and denied in part.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge

7