FILED
United States Court of Appeals
Tenth Circuit

April 15, 2014

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

MARIA HILDA
FUENTES-CHAVARRIA,

Petitioner,

v.

ERIC H. HOLDER, JR.,
United States Attorney General,

Respondent.

No. 13-9503
(Petition for Review)

ORDER AND JUDGMENT[*]

Before **HARTZ**, **McKAY**, and **BACHARACH**, Circuit Judges.

Maria Hilda Fuentes-Chavarria, a native and citizen of Honduras, seeks review

of the denial of her applications for asylum, restriction on removal, and protection

under the Convention Against Torture (CAT). We deny the petition for review.

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.  Background

Ms. Fuentes-Chavarria entered the United States in 2005 and was promptly charged with being removable as an alien present without being lawfully admitted or paroled, *see* 8 U.S.C. § 1182(a)(6)(A)(i).  She applied for asylum and restriction on removal under the Immigration and Nationality Act (INA), *see* 8 U.S.C. §§ 1158(a)(1), 1231(b)(3), and protection under the CAT, *see* 8 C.F.R. § 1208.16(c), claiming she had been raped by a gang member in Honduras.  In her application she sought relief on account of her membership in a particular social group, which she later described as "economically marginalized and socially vulnerable[] young women living in homes without an adult male presence."  Admin. R. at 491.

At a hearing before an immigration judge (IJ), Ms. Fuentes-Chavarria testified as follows:  She was born in 1982 and is one of ten children, including a twin sister. She has several family members living in the United States, and the rest remain in Honduras.  In 2001 she met an older man named Francisco at a restaurant.  He asked for her telephone number, and they later talked on the phone.  After some time, however, she realized that Francisco was a gang member, and he confirmed that he belonged to "MS," *id.* at 304.  On one later occasion, Francisco told her he wanted to see her and meet her at a hotel, which scared her, particularly since he started talking "differently" to her, telling her that "if you don't want it the right way then it will be whichever way I want it to be," *id.* at 303-04.

In recounting her rape, Ms. Fuentes-Chavarria testified that she had been walking on the street when Francisco got her into his car.  He drove her to a deserted location and raped her.  He then abandoned her, leaving her to walk home.  Ms. Fuentes-Chavarria did not contact the police because he had threatened to kill her if she did.  She said, "[H]e told me that if I, if I told the police what had happened, he would do things to me, even kill me, and he could also tell his friends to do to me whatever he wanted." *Id.* at 290.

In the years following the assault, Ms. Fuentes-Chavarria became depressed and turned suicidal.  She was hospitalized for her mental condition for 15 days and then released to her aunt, who lived some two hours away from the family home.  But Francisco contacted her there, prompting her to return to her home and eventually leave for the United States.

In addition to this testimony, Ms. Fuentes-Chavarria presented Dr. Thomas Boerman "as an expert on gangs and the . . . sociopolitical context in Honduras that relates to gangs." *Id.* at 320.  He explained the historical evolution of gangs in Honduras, the underlying reasons they persist, and the government's efforts to deal with them.  He said that gangs target vulnerable women and that women who have been singled out by gangs can expect no protection from the state.

Based on this and other evidence, Ms. Fuentes-Chavarria argued that she had been persecuted "on account of her membership in a social group of economically marginalized, socially vulnerable young women living in homes without male

presence." *Id.* at 350. Citing Dr. Boerman's testimony, she argued that Francisco had targeted her as a way of expanding his gang's power over its territory. And, she claimed, because the government was unable or unwilling to protect her, she was entitled to relief.

The IJ rejected this theory. Acknowledging that there were "issues regarding gang violence in Honduras," the IJ found that Ms. Fuentes-Chavarria was unable "to differentiate her case from that related to criminal violence of the gangs." *Id.* at 157. Making an alternative finding, however, the IJ said that if her alleged social group were cognizable under the INA, she would have established a nexus and would have been entitled to relief. Also, in denying restriction on removal, the IJ ruled that "the harm that she suffered was not on account of one of the five enumerated grounds [for relief under the INA]." *Id.* at 158. And in denying CAT protection, the IJ ruled that she had been subjected to general criminal behavior that did not establish a likelihood of torture upon removal.

The Board of Immigration Appeals (BIA) affirmed, concluding that the IJ "correctly determined that the respondent's asylum and [restriction on] removal claims lacked the required nexus between any feared harm in Honduras and one of the grounds enumerated in the [INA]." *Id.* at 78. It reasoned that Ms. Fuentes-Chavarria had failed to show that her "proposed social group has the requisite social visibility, or is defined with sufficient particularity, to qualify as a particular social group within the meaning of the [INA]." *Id.* The BIA also said that

- 4 -

she failed to show "that, even if such group existed, her membership in the group would be 'at least one central reason' for any harm she fears in Honduras . . . ." *Id.* (quoting 8 U.S.C. § 1158(b)(1)(B)(i)). Finally, the BIA ruled that she was not entitled to CAT protection because she did not establish a likelihood that she would be tortured "at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." *Id.* at 79.

## II. Discussion

We review the BIA's legal conclusions de novo and the agency's factual findings for substantial evidence. *Karki v. Holder*, 715 F.3d 792, 800 (10th Cir. 2013). The BIA's decision "must be upheld if supported by reasonable, substantial, and probative evidence on the record considered as a whole." *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992) (internal quotation marks omitted). Where, as here, "a single member of the BIA issues a brief order affirming an IJ's decision, this court reviews both the decision of the BIA and any parts of the IJ's decision relied on by the BIA in reaching its conclusion." *Razkane v. Holder*, 562 F.3d 1283, 1287 (10th Cir. 2009). But "in deference to the agency's own procedures, we will not affirm on grounds raised in the IJ decision unless they are relied upon by the BIA in its affirmance." *Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006).

To be eligible for asylum, Ms. Fuentes-Chavarria had to show she was unable or unwilling to return to Honduras "'because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular

- 5 -

social group, or political opinion.'" *Dallakoti v. Holder*, 619 F.3d 1264, 1267 (10th Cir. 2010) (quoting 8 U.S.C. § 1101(a)(42)). To obtain restriction on removal, she had to show that her "life or freedom would be threatened in [Honduras] because of [her] race, religion, nationality, membership in a particular social group, or political opinion." *Id.* at 1267-68 (internal quotation marks omitted). In establishing a nexus between the harm suffered or feared and a protected ground for relief, Ms. Fuentes-Chavarria had the burden of establishing that a protected ground "'was or will be at least one central reason for persecuting [her].'" *Id.* at 1268 (quoting 8 U.S.C. § 1158(b)(1)(B)(i)). Because Ms. Fuentes-Chavarria asserted that she was targeted on account of her membership in a particular social group, she had to establish that her alleged group was socially visible and defined with sufficient particularity. *See Rivera-Barrientos v. Holder*, 666 F.3d 641, 648-50 (10th Cir. 2012). "What constitutes a particular social group is a pure question of law that we review de novo." *Cruz-Funez v. Gonzales*, 406 F.3d 1187, 1191 (10th Cir. 2005).

The gist of Ms. Fuentes-Chavarria's argument on appeal is that (1) the IJ did not make the findings necessary to determine whether she belonged to a social group cognizable under the INA or whether there was a nexus between her persecution and her membership in that group and (2) the BIA cannot make fact findings and did not conduct an adequate legal analysis of whether her purported social group is a cognizable one. We disagree. The BIA's decision states, "We are not persuaded that the respondent's proposed social group has the requisite social visibility, or is

defined with sufficient particularity, to qualify as a particular social group within the meaning of the [INA]." Admin. R. at 78. We do not read this ruling as involving any fact finding. As noted above, determining whether a group is a social group within the meaning of the INA is a legal question. The BIA was determining that based on Ms. Fuentes-Chavarria's evidence, even accepting all her factual assertions as true, her purported social group did not satisfy the INA's requirements. Although Ms. Fuentes-Chavarria asserts that the BIA's statement is an inadequate explanation of its decision, the agency's decision need only enable us to conduct a review and show that the agency has properly considered the issue, *see Ritonga v. Holder*, 633 F.3d 971, 975 (10th Cir. 2011) ("What is required is merely that the BIA consider the issues raised, and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." (internal quotation marks and brackets omitted)); *Jimenez-Guzman v. Holder*, 642 F.3d 1294, 1299 n.2 (10th Cir. 2011) (applying same standard to reject alien's "formalistic notion" that agency "is required to make an explicit statement that its review is for clear, unequivocal, and convincing evidence of removability"); *see also Witjaksono v. Holder*, 573 F.3d 968, 978 (10th Cir. 2009) (applying same standard to IJ's decision and stating that "IJ has no duty to write an exegesis on every contention" (internal quotation marks omitted)). The BIA satisfied that obligation here.

Thus, we could review the propriety of the BIA's social-group ruling. But Ms. Fuentes-Chavarria has failed to challenge the BIA's conclusion that her alleged social group was not cognizable under the INA. Her brief explicitly acknowledges that she "has provided no argument on the cognizability of her defined particular social group." Pet'r Br. at 30. Accordingly, we need not consider the correctness of the BIA's conclusion and we can affirm on that ground. *See Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) ("[O]mission of an issue from an opening brief generally forfeits appellate consideration of that issue."); *Murrell v. Shalala*, 43 F.3d 1388, 1390 (10th Cir. 1994) (when an agency decision is based on two independent grounds, one of which is unchallenged, a litigant's success on appeal is foreclosed, regardless of the merit of any other arguments pertaining to the alternative ground). We affirm the denial of Ms. Fuentes-Chavarria's requests for asylum and withholding of removal under the INA. *See Dallakoti*, 619 F.3d at 1267-68 (failure to establish grounds for asylum necessarily constituted failure to establish grounds for withholding of removal).

Finally, "to receive the protections of the CAT, an alien must demonstrate that it is more likely than not that [she] will be subject to torture by a public official, or at the instigation or with the acquiescence of such an official." *Id.* at 1268 (brackets and internal quotation marks omitted). "'Acquiescence of a public official requires that the public official, prior to the activity constituting the torture, have awareness of such activity and thereafter breach his or her legal responsibility to prevent such

activity.'" *Cruz-Funez*, 406 F.3d at 1192 (quoting 8 C.F.R. § 1208.18(a)(7)).  But "actual knowledge, or willful acceptance, is not required for a government to acquiesce to the torture of its citizens."  *Id.* (internal quotation marks omitted).  "Rather, willful blindness suffices to prove acquiescence."  *Id.* (internal quotation marks omitted).  The agency's findings "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."  8 U.S.C. § 1252(b)(4)(B).

Ms. Fuentes-Chavarria presented evidence that the Honduran government fails to protect women from gang violence, but she did not establish that "any reasonable adjudicator," *id.*, would be compelled to conclude that Francisco would likely harm her on behalf of the government or with the government's willful blindness, *see Cruz-Funez*, 406 F.3d at 1192 (where petitioners had been threatened by an individual, evidence of corruption and lack of police funding did not compel conclusion that petitioners faced likelihood of torture by the government or with the government's acquiescence).  We note, for example, that Ms. Fuentes-Chavarria's sister and other family members remain in Honduras, apparently without harm, and Francisco threatened retaliation if she told the police, an unnecessary threat if the government would not take action anyway.  This case is unlike the situation in *Karki*, where the petitioner faced a threat of torture from a rival political party that had won a plurality of seats in the Nepali government and installed a prime minister.  *See* 715 F.3d at 806.  In those circumstances the government's failure to prevent or

prosecute the party's acts of torture was sufficient to show that the government would likely acquiesce in his torture. *See id.* at 807. Additionally, although the rape is a relevant consideration in assessing the likelihood of future torture, it does not entitle Ms. Fuentes-Chavarria to a presumption of future torture. *See* 8 C.F.R. § 1208.16(c)(3) ("all evidence relevant to the possibility of future torture[, including evidence of past torture of the applicant,] shall be considered"); *Niang v. Gonzales*, 422 F.3d 1187, 1202 (10th Cir. 2005).

## III.  Conclusion

The petition for review is denied. Ms. Fuentes-Chavarria's application to proceed on appeal in forma pauperis is granted.

Entered for the Court


Harris L Hartz
Circuit Judge