**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 20, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

JESSICA VANESSA CHICAS-MEJIA,

    Petitioner,

v.

MERRICK B. GARLAND,
United States Attorney General,*

    Respondent.

No. 20-9533
(Petition for Review)

_____

**ORDER AND JUDGMENT****

_____

Before **MORITZ**, **BALDOCK**, and **KELLY**, Circuit Judges.
_____

Petitioner, Jessica Vanessa Chicas-Mejia, is a citizen of Honduras. An

immigration judge denied her asylum application, and the Board of Immigration

Appeals (the Board) affirmed the denial. She petitions for review of the Board's

_____

* Merrick B. Garland has been substituted for William P. Barr as Respondent.
*See* Fed. R. App. P. 43(c)(2).

** After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

decision.[1]  She raises one claim that she did not exhaust before the agency.  As to that claim, we dismiss her petition.  We have jurisdiction under 8 U.S.C. § 1252 to review her exhausted claims.  As to those claims, we deny her petition.

## I.  Background

Petitioner entered the United States in 2014.  The Department of Homeland Security (DHS) charged, and she conceded, that she was inadmissible.  She applied for asylum.

An asylum applicant must show that she is a "refugee."  8 U.S.C. § 1158(b)(1)(B)(i).  A refugee is a person unable or unwilling to return to her country because of persecution or a well-founded fear of persecution on account of any of five protected grounds:  race, religion, nationality, political opinion, or membership in a particular social group.  *Id.* § 1101(a)(42); *Rodas-Orellana v. Holder*, 780 F.3d 982, 986 (10th Cir. 2015).  Persecution in this context includes harm inflicted by private actors "the government is unwilling or unable to control."  *Karki v. Holder*, 715 F.3d 792, 801 (10th Cir. 2013) (internal quotation marks omitted).

Petitioner sought asylum fearing that, if she returns to Honduras, she will be persecuted based on her membership in a particular social group—Honduran women in domestic relationships who are unable to leave.  Her fear arose from threats and

---

[1] Petitioner also unsuccessfully applied for withholding of removal and for protection under the Convention Against Torture.  But she pursues only her asylum claim here.

2

abuse from her former partner in Honduras, a man named Cesar Raul Quintanilla Garcia.

Petitioner's testimony, found credible by the immigration judge, detailed the abuse. From the beginning of the relationship, Garcia mistreated her. Occurring roughly six times per week, the abuse included beatings and forced sex.

Petitioner never reported the abuse to police. Garcia threatened to kill her if she did. And Garcia's father would not allow her to seek help from the police or from medical clinics because, "in places like that," people often inquire about the source of a person's injuries. R. at 101. Besides, Petitioner doubted that the police would help her, noting that she had friends who called the police, and they did not show up for five hours "or even later, or only when the problem is really bad." R. at 103. If she had reported the beatings, she said, Garcia would have been arrested only to be released "two days later." R. at 152.

Although Petitioner never reported Garcia's abuse to police, she mentioned it to an attorney at a local "office that deals with various things involving women's rights." R. at 148. Petitioner went to this office for financial help. When she mentioned the abuse, the attorney told her that if she wanted to make a complaint, she "needed to show up with strikes or bruises." R. at 150.

Petitioner and Garcia never married, but they lived together with Garcia's family for several years and had two children together. They separated twice. The first time, Garcia left for several months to be with another woman. The second time, Petitioner left one day when Garcia was not home. She rented a room about

3

thirty minutes away and started working. Garcia would threaten her at her place of work, but security kept him from entering. The threats caused Petitioner to move in with her mother for a short time before she eventually left Honduras for the United States.

Even after Petitioner arrived in the United States, Garcia continued to threaten her. In one text-message exchange, for instance, he assured her that he would be her "worst nightmare" and insisted that he is "capable of killing" her. R. at 226. Petitioner fears that Garcia will kill her if she returns to Honduras.

The immigration judge denied Petitioner's asylum application, finding that Petitioner did not belong to a particular social group comprising Honduran women in domestic relationships who cannot leave, because she did in fact leave Garcia. In addition, the immigration judge declined to find that the Honduran government would not help Petitioner. The immigration judge recognized that although "more can be done to increase awareness about gender-based violence and improve the government's response, it is an area in which the Honduran government is devoting resources to improve and to increase the protection services offered." R. at 63. For example, the immigration judge found, Honduras prohibits domestic abuse, provides social services to domestic-violence victims, permits imprisonment for disobeying a restraining order, and runs 298 offices providing services to women and focusing in part on ending gender-based violence.

The Board affirmed the denial of asylum. It concluded that Petitioner's proposed particular social group—Honduran women unable to leave a domestic

4

relationship—is not cognizable. And it agreed with the immigration judge that, having ended her relationship with Garcia, Petitioner did not show that she belongs to such a group in any event. Nor did she show, the Board found, that the Honduran government would be unwilling or unable to control her persecutor, or that her persecutor was motivated to harm her based on her membership in a particular social group.

## II. Discussion

### A. Petitioner's Unexhausted Claim

In *In re A-R-C-G-*, the Board concluded that a noncitizen belonged to "a particular social group composed of 'married women in Guatemala who are unable to leave their relationship.'" 26 I. & N. Dec. 388, 389 (B.I.A. 2014). After the immigration judge ruled on Petitioner's asylum application in this case, but before the Board ruled on her appeal, *A-R-C-G-* was overruled. *In re A-B-*, 27 I. & N. Dec. 316, 317 (A.G. 2018), *overruled in part by Grace v. Barr*, 965 F.3d 883 (D.C. Cir. 2020). The Board cited *A-B-* several times in affirming the immigration judge in this case.

Petitioner argues that the Board should not have applied *A-B-* retroactively to her case. But she did not present this argument to the Board; she instead argued that she should prevail even under *A-B-*. The limits on our jurisdiction generally require a noncitizen to "present the *same specific legal theory* to the [Board] before he or she may advance it in court." *Garcia-Carbajal v. Holder*, 625 F.3d 1233, 1237 (10th Cir. 2010). Petitioner fails to explain why her unexhausted claim should not be subject to

5

this general rule.  We therefore dismiss the part of the petition raising the unexhausted claim.

## B.  Petitioner's Exhausted Claims

Challenging the Board's asylum decision, Petitioner argues that she belongs to a valid particular social group and that the Honduran government would be unwilling or unable to control Garcia if she returns to that country.

### 1.  Scope and Standards of Review

A single member of the Board issued a brief order affirming the immigration judge's decision in this case, so we review the Board's decision and any parts of the immigration judge's decision that it relies on.  *See Dallakoti v. Holder*, 619 F.3d 1264, 1267 (10th Cir. 2010).  We review the Board's legal conclusions de novo.  *Id.* And we review its factual findings for substantial evidence, meaning that we will treat those findings as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."  *Id.* (internal quotation marks omitted).

### 2.  Analysis

"What constitutes a particular social group is a pure question of law that we review de novo."  *Cruz-Funez v. Gonzales*, 406 F.3d 1187, 1191 (10th Cir. 2005). A "particular social group" is "a group of persons all of whom share a common, immutable characteristic such as sex, color, or kinship ties."  *Rodas-Orellana*, 780 F.3d at 990 (ellipsis and internal quotation marks omitted).  A particular social group must be defined with particularity; it cannot be indeterminate, "too subjective, inchoate, and variable."  *Id.* (internal quotation marks omitted).  In addition to being

6

defined with particularity, the group must be socially distinct, a quality informed by "whether citizens of the applicant's country would consider individuals with the pertinent trait to constitute a distinct social group, and whether the applicant's community is capable of identifying an individual as belonging to the group." *Id.* at 991 (internal quotation marks omitted).

Petitioner does not try to demonstrate that the record supports a conclusion that her proposed particular social group is cognizable; she instead proceeds as if such a conclusion inevitably follows from the decision in *A-R-C-G-*. This strategy suffers from two flaws. First, the strategy assumes that the Board should have applied *A-R-C-G-* to this case even though it had been overruled—an issue that Petitioner did not exhaust and that we do not consider. Second, even if *A-R-C-G-* had not been overruled, it would not dictate the result that Petitioner seeks, for *A-R-C-G-* recognized that the validity of a proposed particular social group depends on "the evidence presented regarding the particular circumstances in the country in question." 26 I. & N. Dec. at 392. *A-R-C-G-* involved a different country from Petitioner's, a different proposed group, and a DHS concession (absent here) that the proposed group was valid. *See id.* at 390. With these differences, *A-R-C-G-* cannot bear the weight that Petitioner puts on it.

We agree with the Board that Honduran women who cannot leave a domestic relationship do not make up a cognizable particular social group. As the Board noted, it is unclear how members of this "proposed group can be distinguished from other women in Honduras who are in a domestic relationship." R. at 4. Petitioner

7

does not suggest a method for making such a distinction. Nor does she direct us to evidence showing that Honduran society perceives her proposed group as a distinct social group. Because Petitioner's proposed group is not cognizable for these reasons, we need not consider her challenge to the Board's conclusion that she impermissibly defined the proposed group by the harm to its members.

Even if Petitioner's proposed particular social group were cognizable, she still would not prevail because we cannot overturn the Board's factual finding that Petitioner does not belong to the group. Petitioner argues that she "was never able to freely and safely leave her relationship," Pet'r's Br. at 28, highlighting evidence that Garcia became aggressive when she told him she was leaving and that he continued to threaten her after she left. Petitioner admits, however, that she left Garcia and lived in Honduras for several months before traveling to the United States. Given that evidence, we cannot say that any reasonable factfinder would be compelled to conclude that Petitioner could not leave her relationship with Garcia. So the Board's finding on that point is conclusive.

Also conclusive is the Board's factual finding that Petitioner failed to show that Honduran authorities would be unable or unwilling to control Garcia. The evidence on this point is mixed. On the one hand, as Petitioner says, the record shows that domestic violence remains a serious problem in Honduras, often going unpunished. And Petitioner provided examples of inadequate responses from Honduran authorities to reports of domestic violence. On the other hand, as the Board noted, the record also shows "the existence of laws and governmental services

8

to protect women and help the victims of domestic violence." R. at 5. And Petitioner herself believed that Garcia would be arrested if she reported his abuse. On the whole, the evidence would not compel any reasonable factfinder to conclude that Honduran authorities would not or could not control Garcia.

Yet another insurmountable problem for Petitioner is the Board's factual finding that she failed to show that Garcia "was motivated to harm [her] because of her status as a member of her proposed social group." R. at 4. Petitioner testified that Garcia abused her from "the onset" of their relationship. R. at 100. And, by Petitioner's own argument, it was Garcia's abuse that prevented her from truly leaving the relationship. This sequence—the abuse coming *before* the alleged inability to leave—supports the finding that Garcia's motivation to harm her did not arise from her membership in her proposed group.

In sum, these several independent reasons require us to deny Petitioner's challenge to the Board's asylum decision.

### C. Petitioner's Request for Remand

Petitioner alternatively contends that she qualifies as a refugee through her membership in a particular social group comprising Honduran women, a broader group than she originally proposed. She raised this proposed group before the Board, but the Board did not address it. She asks that we remand for the Board to consider it. A remand would be futile, however, because we have upheld the finding that Petitioner did not show that Honduran authorities could not or would not control Garcia, a finding that forecloses relief regardless of whether Petitioner belongs to a

9

cognizable particular social group. We therefore deny Petitioner's request to remand. *Cf. Rodas-Orellana*, 780 F.3d at 996 (declining to remand in part because the petitioner did not "point to any evidence indicating that" narrowing his proposed particular social group "lends more support to his argument for social distinction").

## III. Conclusion

The petition is dismissed in part and denied in part. Petitioner's motion to proceed without prepaying fees or costs is granted.

Entered for the Court


Bobby R. Baldock
Circuit Judge