**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 3, 2023**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

LUIS RODOLFO LOPEZ-FLORES,

     Petitioner,

v.

MERRICK B. GARLAND,
United States Attorney General,

     Respondent.

No. 22-9516
(Petition for Review)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MORITZ**, **EID**, and **ROSSMAN**, Circuit Judges.
_____

Petitioner Luis Rodolfo Lopez-Flores is a citizen of El Salvador.  An

immigration judge denied his applications for asylum, restriction on removal, and

protection under the Convention Against Torture.  The Board of Immigration

Appeals (Board) dismissed his appeal, and he now petitions for review of the Board's

decision.  Several parts of his petition present arguments that he did not exhaust

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal.  _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

before the Board, and we dismiss those parts for lack of jurisdiction. We otherwise deny the petition.

## I. Background

Found credible by the immigration judge, Petitioner testified that he fears persecution in El Salvador from two sources: a man named Roberto Castro and members of the Mara Salvatrucha gang (MS-13). Petitioner's family had problems with Castro going back many years. Before Petitioner's birth, Castro raped Petitioner's aunt. Castro also broke into Petitioner's parents' home to beat them up. And Petitioner's mother helped with a prosecution that landed Castro in prison.

Petitioner's first run-in with Castro happened in 2015. By then, Petitioner was an adult. Castro approached him and said he would "get revenge." R. at 90. Later that year, Petitioner was sitting on his motorcycle when Castro's nephew attacked him from behind. Petitioner defended himself, and eventually his friends intervened to end the fight. During the fight, Castro's nephew said that he would "get even or get revenge." R. at 94. Castro later threatened again to "get even" with Petitioner for the fight with his nephew. R. at 96. And on another occasion, Castro claimed to know what family Petitioner came from and threatened "to take care of some old business." R. at 97.

Petitioner's first encounter with MS-13 members happened while he ate lunch with friends. Gang members approached and asked him to join MS-13. He responded that he did not want to join because the gang "took part in violent acts and raped women." R. at 103. The following year, gang members tried to extort him,

asking him to pay them $400 per month. About a week later the gang members were waiting for Petitioner when he left his university. They surrounded his car. One of them reached into his pants, behavior Petitioner took to mean that the man had a weapon. Petitioner sped away in his car. Petitioner had another encounter with gang members when he visited his girlfriend. While he spoke with his girlfriend, three gang members approached him from behind, threw him to the ground, and beat him with their hands and feet until he escaped.

Petitioner suspected his problems with gang members and Castro were connected because one of the gang members who had bothered him is friends with Castro.

Fearing Castro and the gang members, Petitioner came to the United States. The Department of Homeland Security began removal proceedings against him. After conceding he was removable, Petitioner applied for asylum, restriction on removal, and protection under the Convention Against Torture. The immigration judge denied his applications, and the Board dismissed his appeal.

## II. Discussion

A single Board member issued a brief order affirming the immigration judge's decision in this case, so we review the Board's decision and any parts of the immigration judge's decision that it relies on. *See Dallakoti v. Holder*, 619 F.3d 1264, 1267 (10th Cir. 2010). We review the Board's legal conclusions de novo. *Id.* And we review its factual findings for substantial evidence, meaning we will treat

3

those findings as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* (internal quotation marks omitted).

### A. Asylum

To receive asylum, an applicant must be a "refugee." 8 U.S.C. § 1158(b)(1)(A). A refugee is a person who is unable or unwilling to return to his or her country because of persecution or a well-founded fear of persecution on account of any of five protected grounds: race, religion, nationality, political opinion, or membership in a particular social group. *Id.* § 1101(a)(42); *Rodas-Orellana v. Holder*, 780 F.3d 982, 986 (10th Cir. 2015). An applicant can obtain refugee status by showing past persecution on account of a protected ground, which creates a rebuttable presumption of a well-founded fear of future persecution on account of such a ground. *Rodas-Orellana*, 780 F.3d at 986.

The Board concluded that the harm Petitioner suffered in El Salvador did not amount to persecution. "Persecution is an extreme concept that does not include every sort of treatment our society regards as offensive." *Zhi Wei Pang v. Holder*, 665 F.3d 1226, 1233 (10th Cir. 2012) (brackets and internal quotation marks omitted). "Threats alone generally do not constitute actual persecution; only rarely, when they are so immediate and menacing as to cause significant suffering or harm in themselves, do threats per se qualify as persecution." *Vatulev v. Ashcroft*, 354 F.3d 1207, 1210 (10th Cir. 2003). Whether an asylum applicant established past persecution "is a question of fact, even if the underlying factual circumstances are

not in dispute and the only issue is whether those circumstances qualify as persecution." *Vicente-Elias v. Mukasey*, 532 F.3d 1086, 1091 (10th Cir. 2008).

Substantial evidence supports the Board's conclusion that Petitioner did not show past persecution. Like the agency before us, we recognize that Petitioner endured "painful experiences" in El Salvador. R. at 3. But the record does not compel the conclusion that those experiences amounted to persecution. *Cf. Sidabutar v. Gonzales*, 503 F.3d 1116, 1124 (10th Cir. 2007) (upholding a finding of no persecution where the petitioner testified that he had been beaten repeatedly); *Kapcia v. INS*, 944 F.2d 702, 704–05, 708 (10th Cir. 1991) (same where the petitioners testified that they had been detained and beaten).

Petitioner argues that MS-13 members intended to shoot him when they surrounded his car outside the university. And, as he says, "attempted murder is persecution." *Karki v. Holder*, 715 F.3d 792, 805 (10th Cir. 2013) (internal quotation marks omitted). But although Petitioner characterizes this encounter as an attempted murder, the evidence—testimony that one of the gang members reached into his pants—does not compel that characterization.

Petitioner also highlights that MS-13 is "one of the most dangerous and rapidly expanding criminal gangs in the world today."[1] Pet'r's Br. at 12 (internal quotation marks omitted). "Larger cultural forces can imbue individualized conflicts

---

[1] We deny Petitioner's request that we take judicial notice of a statement from the United States Department of the Treasury discussing MS-13. *See* 8 U.S.C. § 1252(b)(4)(A) (requiring us to decide a petition for review "only on the administrative record").

or threats with more (or less) substance than they may suggest on their face."
*Vatulev*, 354 F.3d at 1210.  Although MS-13's violence and influence may add substance to Petitioner's encounters with its members, we still cannot say that the record compels the conclusion that he suffered past persecution in El Salvador.

Even without past persecution, however, an applicant can obtain refugee status by showing a subjectively genuine and objectively reasonable fear of future persecution on account of a protected ground.  *See Ritonga v. Holder*, 633 F.3d 971, 976 (10th Cir. 2011).  Such a fear is objectively reasonable if persecution is a reasonable possibility.  *Uanreroro v. Gonzales*, 443 F.3d 1197, 1202 (10th Cir. 2006).  The Board concluded that Petitioner lacked an objectively reasonable fear of future persecution, citing evidence that members of his family have lived in El Salvador unharmed and that gang members stopped approaching him even before he came to the United States.

Despite the Board's conclusion, Petitioner marshals evidence suggesting that his fear of future persecution is objectively reasonable.  He points to evidence, for example, that MS-13 has killed others who refused to join the gang and that he lived in hiding before he fled.  Although some evidence supports Petitioner's view, we cannot say that the record compels that view.  And so we may not disturb the Board's conclusion that Petitioner does not have an objectively reasonable fear of future persecution in El Salvador.[2]

---

[2] Petitioner argues that his fear of persecution is well founded because MS-13 has a pattern and practice of persecuting individuals who express negative opinions

6

In sum, substantial evidence supports the Board's findings that Petitioner did not show past persecution or a well-founded fear of future persecution. Those findings prevent Petitioner from obtaining asylum. So we need not consider his challenges to the additional reasons the agency gave for denying his asylum claim.

## B. Restriction on Removal

To qualify for restriction on removal, an applicant must show "a clear probability of persecution on account of a protected ground." *Rodas-Orellana*, 780 F.3d at 987 (internal quotation marks omitted). This burden is higher than the burden for asylum. *Id.* at 986. For that reason, Petitioner's inability to meet the burden for asylum necessarily precludes him from meeting the burden for restriction.[3] *See id.* at 987.

## C. The Convention Against Torture

The Convention Against Torture "prohibits the return of an alien to a country where it is more likely than not that he will be subject to torture by a public official, or at the instigation or with the acquiescence of such an official." *Karki*, 715 F.3d at 806 (internal quotation marks omitted). "Acquiescence of a public official

---

about the gang or refuse its demands. *See* 8 C.F.R. § 1208.13(b)(2)(iii) (permitting pattern-and-practice evidence to establish fear of future persecution). But he did not present this theory to the Board, so we lack jurisdiction to consider it. *See Garcia-Carbajal v. Holder*, 625 F.3d 1233, 1237–38 (10th Cir. 2010).

[3] Petitioner argues that the agency applied the wrong standard when it denied his restriction-on-removal claim. Because he did not present this argument to the Board, we lack jurisdiction to consider it. *See Garcia-Carbajal*, 625 F.3d at 1237–38.

requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity." 8 C.F.R. § 1208.18(a)(7). This standard does not require the government's actual knowledge or willful acceptance; willful blindness is enough. *Karki*, 715 F.3d at 806.

The Board concluded that Petitioner failed to show he will more likely than not suffer torture with the acquiescence of a public official if he returns to El Salvador. Challenging this conclusion, Petitioner cites evidence of rampant gang violence in El Salvador and officials' inability to control it. At the same time, though, the record contains evidence showing that the Salvadoran government is trying to eliminate the gangs. Taken as a whole, the record does not compel the conclusion that public officials would likely acquiesce in Petitioner's torture in El Salvador.

We are not persuaded otherwise by Petitioner's reliance on *Karki*. In that case, the foreign government regularly failed "to take steps to prevent or punish" acts of torture. 715 F.3d at 807. In this case, by contrast, the record contains evidence that Salvadoran officials are taking steps to prevent and punish gang violence.

**D. Excluding Evidence**

At his merits hearing, Petitioner tried to submit an affidavit from his mother. The affidavit apparently contained information about the rape and home invasion

committed many years ago against members of Petitioner's family.[4]  The immigration judge excluded the affidavit out of concern for Petitioner's mother's confidentiality because she had submitted it in support of her own asylum application.  The Board concluded that even if the immigration judge erred by excluding the affidavit, the error did not prejudice Petitioner.

Petitioner argues that excluding his mother's affidavit prejudiced him because it deprived him of evidence that "established the factual background" for Castro's animus against his family and revealed Castro's motive to persecute him.  Pet'r's Br. at 47.[5]  But Petitioner's testimony sufficiently established that background.  Besides, the government expressly said it did not contest that the rape and home invasion occurred.  And, in her written order, the immigration judge noted Castro's rape of Petitioner's aunt, the break-in at Petitioner's parents' home, and Petitioner's mother's cooperation with the investigation that led to Castro's imprisonment.  Given those circumstances, we agree with the Board that excluding the affidavit did not prejudice Petitioner.

---

[4] The affidavit itself is not part of the record.

[5] Petitioner argues in passing that the Board should have concluded that excluding the affidavit violated his due-process rights.  Although he challenged the exclusion of the affidavit before the Board, he did not do so under a due-process theory.  To the extent he intends to raise a due-process theory now, we lack jurisdiction to consider that unexhausted theory.  *See Garcia-Carbajal*, 625 F.3d at 1237–38.

### III.  Conclusion

We dismiss the petition for review in part for lack of jurisdiction.  We otherwise deny the petition.

Entered for the Court

Allison H. Eid
Circuit Judge