FILED
**United States Court of Appeals**
**Tenth Circuit**

**July 2, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

JAVIER EVELIO HERNANDEZ-
GARCIA,

Petitioner,

v.

MERRICK B. GARLAND,
United States Attorney General,*

Respondent.

No. 20-9546
(Petition for Review)

_____

**ORDER AND JUDGMENT**
_____

Before **MORITZ**, **BALDOCK**, and **KELLY**, Circuit Judges.
_____

Javier Evelio Hernandez-Garcia, a native and citizen of Cuba, seeks review of a

decision by the Board of Immigration Appeals (BIA) that affirmed an Immigration

---

\* On March 11, 2021, Merrick B. Garland became Attorney General of the
United States.  Consequently, his name has been substituted for William P. Barr as
Respondent, per Fed. R. App. P. 43(c)(2).

\*\* After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument.  _See_ Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
submitted without oral argument.  This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel.  It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

Judge's (IJ's) removal order. Exercising jurisdiction under 8 U.S.C. § 1252, we deny the petition in part and dismiss it in part.

## BACKGROUND

Hernandez-Garcia left Cuba in April 2019 on a Cuban-issued passport and flew to Nicaragua. After traveling through Nicaragua, Guatemala, Honduras, and Mexico, he unlawfully crossed the United States border in July near El Paso, Texas. The Department of Homeland Security (DHS) apprehended him and charged him with removability.

Hernandez-Garcia appeared pro se before an IJ and submitted an I-589 application for asylum and withholding of removal.[1] In the application, he claimed he was twice arrested in Cuba for expressing his political opinion against the Cuban regime. The IJ scheduled a removal hearing for December and advised him that he could submit further evidence and appear with counsel. Hernandez-Garcia said he understood and had no questions.

Hernandez-Garcia appeared pro se at the removal hearing. He acknowledged various aspects of his application (including that he was a Cuban citizen), executed it, and tendered several exhibits, including a declaration, medical documents, and a letter from his mother.

---

[1] Hernandez-Garcia also sought protection under the Convention Against Torture. But he does not challenge in his opening brief the agency's treatment of that claim and we do not discuss it further, as "[t]he failure to raise an issue in an opening brief waives that issue." *Rodas-Orellana v. Holder*, 780 F.3d 982, 998 (10th Cir. 2015) (internal quotation marks omitted).

In his declaration, he stated that on February 11, 2019, Cuban authorities beat him and arrested him after he "emphasized . . . [he] was against the Castro/Castrista regime that is currently in power." R. at 156. The authorities took him to a hospital for treatment and then held him for 48 hours at a police station. The authorities returned him to the hospital for further treatment, however, where he remained handcuffed to a bed until February 21. Authorities released him, but they closed his business and warned him about speaking out against the government. On February 24, he was again arrested, this time for not voting in an election. He was held in a cell for three days without food or water, and then released, whereupon he decided to seek refuge in the United States.

But when Hernandez-Garcia testified in support of his application, he provided inconsistent and improbable accounts of the events motivating his departure from Cuba and his arrival in this country:

- He testified that the beating by the authorities fractured his elbow and knee, resulting in "some liquid . . . between the bones of the knee" that required injections. *Id.* at 99-100. But his medical documents referenced only rib fractures and burns, both of which he denied.

- Although he claimed the Cuban government had persecuted him, the government authorities at the airport had in fact inspected him, stamped his passport, and allowed him to leave the country without incident. And in response to DHS counsel's questions about his passport, he was "evasive" and suggested the stamp was from the Nicaraguan embassy. *Id.* at 41; *see also id.* at 113-14.

- He testified that he came to the United States to request asylum, crossing the border just "0.18 miles west of the major port of entry . . . in El Paso," and he entered illegally because he had been "mistreated and extorted by the Mexican police," who were chasing him. *Id.* at 119. He claimed he didn't know he could lawfully come into the U.S. through a port of entry. But he also testified he had in fact gone to the port of entry, stood in line with his girlfriend and her child, and received a piece of paper with a number on it from a U.S. immigration official. He claimed to have

3

discarded the paper, though, and he did not submit any evidence from his girlfriend. When the IJ confronted him about the discrepancies in his testimony, he said he didn't go to the port of entry because he "was scared of the Mexican police" despite the presence of U.S. authorities. *Id.* at 120.

• Even though the Cuban government allowed him to leave the country, he testified that if he were to return, the government would stop his mother's cancer treatment. *Id.* at 84. In support, he offered a letter from his mother stating that Cuban authorities came to her home and said that if Hernandez-Garcia "is taken back to Cuba h[e] would find his own death and that [her] cance[r] treatment would be cancelled." *Id.* at 152.

• He testified he was arrested the second time at noon on election day for not voting. But when the IJ inquired about the closing time for voting, he responded evasively, claiming that he "wasn't there when they were closed" and that he was arrested because "the voting starts early in the morning and [he] hadn't gone yet." *Id.* at 110-11.

At the conclusion of the hearing, the IJ denied Hernandez-Garcia's I-589 application and ordered him removed to Cuba. The IJ reasoned that his claims failed because he was not credible, as his testimony was either inconsistent with his other evidence or simply incredible, as when he testified that authorities (1) deprived him of water for three days, yet he denied suffering dehydration, (2) arrested him at noon on election day, yet he was unable to offer a closing time for voting, and (3) threatened to stop his mother's cancer treatment if he returned to Cuba.

The BIA adopted and affirmed the IJ's decision, stressing that "[w]ithout credible testimony, and in the absence of corroborating evidence sufficient to demonstrate his eligibility for relief, [Hernandez-Garcia] is unable to satisfy the burden of proof applicable to asylum and withholding of removal." *Id.* at 8.[2]

---

[2] The BIA noted that the IJ had denied asylum on the alternative ground that Hernandez-Garcia failed to seek asylum in one of the countries he travelled through before reaching the United States. *See* 8 C.F.R. § 208.13(c)(4) (stating that with

4

## DISCUSSION
### I. Standards of Review

"When a single member of the BIA issues a brief order affirming an IJ's decision, this court reviews both the decision of the BIA and any parts of the IJ's decision relied on by the BIA in reaching its conclusion." *Dallakoti v. Holder*, 619 F.3d 1264, 1267 (10th Cir. 2010) (internal quotation marks omitted). We review legal conclusions de novo and factual findings for substantial evidence. *Id.* "Under a substantial evidence standard, [the agency's] factual findings are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* (internal quotation marks omitted).

### II. Asylum & Withholding of Removal

To be eligible for asylum, a petitioner must establish that he is a refugee—a person who is "unable or unwilling to return to the country of origin because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Rivera-Barrientos v. Holder*, 666 F.3d 641, 645-46 (10th Cir. 2012) (emphasis and internal quotation marks omitted). "To be eligible for withholding of removal, an applicant must demonstrate that there is a clear probability of persecution because of his race, religion, nationality,

---

certain exceptions, "any alien who enters, attempts to enter, or arrives in the United States across the southern land border on or after July 16, 2019, after transiting through at least one country outside the alien's country of citizenship, nationality, or last lawful habitual residence en route to the United States, shall be found ineligible for asylum"). The BIA did not, however, rely on this ground, and we do not address it.

5

membership in a particular social group, or political opinion." *Zhi Wei Pang v. Holder*, 665 F.3d 1226, 1233 (10th Cir. 2012) (internal quotation marks omitted).

### III. Credibility

"[A]lthough an applicant's testimony may be sufficient, without corroboration, to meet the burden of proof [for asylum or withholding of removal], the applicant's testimony must also be found credible and persuasive, and refer to specific facts sufficient to demonstrate that the applicant is a refugee." *Uanreroro v. Gonzales*, 443 F.3d 1197, 1205 (10th Cir. 2006) (internal quotation marks omitted). "An IJ's adverse credibility determination may appropriately be based upon such factors as inconsistencies in the witness' testimony, lack of sufficient detail, or implausibility," as well as defects in "his or her testimonial demeanor." *Elzour v. Ashcroft*, 378 F.3d 1143, 1152-53 (10th Cir. 2004); *see also* 8 U.S.C. § 1229a(c)(4)(C) (stating that an IJ may base a credibility determination on such things as the applicant's demeanor and responsiveness while testifying, "the internal consistency of" his or her testimony, "the consistency of [the testimony] with other evidence of record," and the plausibility of the applicant's account, "without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim"). But "the IJ must give specific, cogent reasons for disbelieving [an applicant's testimony]," and those reasons "must be supported by substantial evidence in the record." *Uanreroro*, 443 F.3d at 1204-05.

Hernandez-Garcia argues the IJ's credibility analysis is flawed because it was "based on facts not in the record." Specifically, he contends "the IJ inserted his own notions for proper refugee behavior and the behaviors of poll workers, hospital workers,

6

and passport agents in Cuba to find [him] not credible." Pet'r's Opening Br. at 15. Granted, an "IJ may not rest an adverse credibility determination on his own unsupported opinion as to how an authoritarian government operates." *Elzour*, 378 F.3d at 1153 (internal quotation marks omitted). But the IJ did not do so here. Rather, the IJ supported his adverse credibility determination with reasonable, substantial, and probative evidence, citing multiple implausibilities and inconsistencies in Hernandez-Garcia's testimony and noting his evasive responses when questioned about those matters. And the BIA relied on the IJ's detailed analysis.

"We may not weigh the evidence, and we will not question the [IJ's] or BIA's credibility determinations as long as they are substantially reasonable." *Woldemeskel v. INS*, 257 F.3d 1185, 1192 (10th Cir. 2001). Here, the agency's credibility determination was substantially reasonable. "[N]o reasonable adjudicator would be compelled to conclude [that Hernandez-Garcia's] testimony was credible." *Igiebor v. Barr*, 981 F.3d 1123, 1135-36 (10th Cir. 2020) (internal quotation marks omitted).

With his testimony properly rejected, Hernandez-Garcia identifies no other evidence demonstrating his eligibility for asylum and withholding of removal. *See, e.g.*, *id.* at 1136 (concluding that because "the BIA's adverse credibility determination [wa]s conclusive," the alien could not show a basis to avoid removal (internal quotation marks omitted)).

## IV. Due Process

Alternatively, Hernandez-Garcia argues the administrative record is inadequate "concerning [his] alienage." Pet'r's Opening Br. at 14. He asserts the IJ failed to require

DHS to show he "is in fact an alien." *Id.* He further argues that due to his pro se status, the "asylum proceedings [were] fatally flawed" because the IJ "failed to ensure [he] understood his regulatory, statutory, and constitutional rights." *Id.* at 23. In particular, he complains the IJ accepted his DHS record without soliciting his position and failed to give him an opportunity to submit corroborating evidence.

Aliens are entitled to "the minimal procedural due process rights for an opportunity to be heard at a meaningful time and in a meaningful manner." *Igiebor*, 981 F.3d at 1134. But Hernandez-Garcia did not raise any of his due process arguments in his appeal to the BIA even though they were available. Thus, the arguments are "unexhausted and beyond this court's review," even if "frame[d] . . . in terms of constitutional due process." *Id.* (internal quotation marks omitted).[3]

---

[3] Even if Hernandez-Garcia's briefing before the BIA could be said to have properly exhausted these arguments, they fail on the merits. *See Igiebor*, 981 F.3d at 1134. First, the IJ's decision indicates Hernandez-Garcia conceded removability as an alien unlawfully present in the United States, *see* R. at 38, and his own testimony confirmed his alienage and unlawful presence, *see, e.g., id.* at 82-83, 85. Second, he responded, "no," when the IJ asked him if he objected to the admission of his DHS record, *id.* at 119, and the IJ informed him months before the merits hearing that he could submit evidence, call witnesses, inspect/object to the government's evidence, and retain counsel, *see id.* at 64, 79. Thus, he hasn't shown a due-process violation.

Nor has Hernandez-Garcia demonstrated prejudice from his alleged violations. *See Lucio-Rayos v. Sessions*, 875 F.3d 573, 576 (10th Cir. 2017) ("In order to prevail on his due process claim, [an alien] must establish both that he was deprived of due process and that th[e] deprivation prejudiced him."). In particular, he has not explained how any omitted procedure would in fact have established his credibility or demonstrated his eligibility for asylum or withholding of removal.

8

## CONCLUSION

We deny Hernandez-Garcia's petition to the extent he challenges the agency's adverse credibility determination, and we dismiss the petition to the extent he raises procedural objections to the IJ's removal proceedings.

Entered for the Court


Nancy L. Moritz
Circuit Judge